RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0176p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAVID R. HUNTER,

        *Plaintiff-Appellant,*

      *v.*

SECRETARY OF UNITED STATES ARMY,

        *Defendant-Appellee.*

No. 08-1721

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-14490—Avern Cohn, District Judge.

Argued and Submitted: April 30, 2009

Decided and Filed: May 18, 2009

Before: GUY, GILMAN, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** William L. Woodard, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** David A. Kotwicki, DAVID A. KOTWICKI, P.L.C., Utica, Michigan, for Appellant. William L. Woodard, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. David R. Hunter filed this employment-discrimination suit against his employer, the United States Army (the government), alleging discrimination on the basis of his race (white), sex (male), and age (62) under both Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). He also included a claim for retaliation due to actions allegedly taken against him once he exercised his rights under these Acts.

1

The essence of Hunter's discrimination claims is that, between 1991 and 2004, he was repeatedly passed over for promotion and training opportunities. Between 2002 and 2004, moreover, he was allegedly subjected to harassment by one of his supervisors. Hunter further claims that after he contacted an Equal Employment Opportunity (EEO) counselor at his place of employment, his supervisors subjected him to retaliation.

The district court dismissed three of Hunter's four claims as time-barred and granted summary judgment in favor of the government on the remaining cause of action. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Hunter is a white male born in 1947. Since 1991, he has been employed as a Mechanical Engineering Technician at the U.S. Army Research, Development and Engineering Command (TARDEC), which is a part of the U.S. Army Tank-automotive and Armaments Command (TACOM) in Warren, Michigan.

### A.     Administrative proceedings

On September 22, 2004, Hunter contacted an Equal Employment Opportunity (EEO) counselor at TACOM, asserting that he had been discriminated against on the basis of his race, sex, and age. He alleged that the discriminatory actions resulted in a hostile work environment and that he had been denied promotional and training opportunities available to other employees. Hunter filed a formal complaint of discrimination with TACOM's EEO office in November 2004, reasserting these same allegations. The EEO counselor notified Hunter later that month that, based on her review of his complaint, the following issue was accepted for investigation:

> Wherein you alleged harassment (non-sexual) and management has held you back from career and promotional advancements resulting in a hostile working environment [at TARDEC].

Following a fact-finding conference, an investigator with the Department of Defense's Office of Complaint Investigation determined that Hunter was not claiming that he had missed any advancement opportunities during the actionable time period, and that management's testimony about why he was not promoted was credible. Hunter then requested a hearing before the Equal Employment Opportunity Commission (EEOC). An

administrative law judge (ALJ) issued an order for a show-cause hearing in April 2007 and ordered Hunter to provide an affidavit and other evidence in support of his discriminatory denial-of-promotion and hostile-work-environment claims. After the hearing, the ALJ dismissed the complaint. In July 2007, the Department of the Army issued a final agency action implementing the decision of the ALJ.

**B.     The federal lawsuit**

Hunter responded by filing suit in the federal district court in October 2007. He alleged that he became eligible for promotion to the next salary-grade level in July 1992, but he never received this promotion. Between 1992 and 1993, he was not offered an "upward mobility" program in which other, lower-graded employees participated. He requested, and was denied, in-house training courses during that same time period. TARDEC contemporaneously began a "reorganization" process that combined previously separate work sections together and transferred employees into different work groups. Hunter was transferred to different work groups approximately ten times and was allegedly assigned "mundane, repetitive tasks."

During the same time, Hunter enrolled in college. He requested funding from TARDEC to pay for his tuition and believed that other employees were being compensated for their outside education. But his supervisor told him that there was no funding currently available. He was finally able to obtain funding for his tuition from TARDEC in the summer of 1994.

Hunter was led to believe that he would be eligible to receive a conversion to the better-paid position of a GS-830 engineer when he finished his college-degree requirements. After he completed those requirements in 1996, however, the conversion did not take place. An employee in the personnel department told Hunter that he would not be promoted due to a TACOM reduction in force (RIF). The same employee later advised Hunter that he was required to complete a one-year engineering-training detail at TACOM in order to receive his promotion. Hunter completed the training in August 1997, but his conversion process was once again delayed due to another RIF.

After the RIF was complete at the end of 1997, Hunter's supervisors advised him that, to receive the conversion, he should prepare a resume, submit the resume to an online computer system, and prepare a document describing his job information. Hunter admits that he never completed these requirements. He also alleges that, from 1997 to 2003, he applied for numerous promotions to the GS-11 salary grade, but did not receive any of them. At the time that he filed his lawsuit, he had been held at the same pay grade for over 15 years.

Beginning in February 1998, Hunter requested an investigation and redress for his grievances from a variety of sources, including the TACOM Inspector General's Office, Senator Carl Levin (a member of the Senate Armed Services Committee), and through his union. None of these sources was effective in addressing his complaints.

Hunter also alleges that, beginning in July 2002, his supervisor Frank Pitts harassed him, intimidated him, and altered his "Procurement Work Directives" (PWD) work packages. According to Hunter, Pitts "would occasionally go to Mr. Hunter's work station, and harass him, about recording information in an electronic system that he managed." He also said that Pitts would "routinely corner Mr. Hunter in his work station, . . . and yell orders at him, point with his hand close to Mr. Hunter's face, and, whether purposefully or inadvertently, spit on him as he talked."

Hunter alleges that this type of action would happen approximately every four to six weeks. He also suspected that some of his PWD packages were altered after he had completed working on them. After investigating the matter, Hunter discovered that one important package was in fact altered by Pitts. Hunter claims that he reported the harassment to higher management, but that no action was taken. As a result, he became "distraught" and sought counseling at the TACOM Employee Assistance Center for help in dealing with the situation.

Hunter subsequently contacted an EEO counselor and participated in a precomplaint intake interview in September 2004. He claims that the TARDEC management subsequently took retaliatory actions against him. He alleges, for example, that Pitts sabotaged another PWD package that Hunter had prepared, delaying it for a week. Hunter was also moved from his former team to a new "3D" unit and was required to leave a note whenever he left

his work station. Finally, one of Hunter's supervisors stated during a team meeting in front of numerous coworkers that "any high school kid" could perform Hunter's job.

## C.     Procedural history in the district court

The complaint contained four counts. Based upon the facts recounted above, Counts I, II, and III alleged reverse-race, reverse-gender, and age discrimination. These counts also asserted that Hunter was subjected to a hostile work environment when he was harassed by Pitts from 2002 to 2004. In Count IV, Hunter alleged retaliation for having complained about his employer's discriminatory practices.

The district court granted the government's motion to dismiss the complaint or, in the alternative, its motion for summary judgment. In its opinion, the court found that Hunter's allegations that he was denied sufficient opportunities for career and promotional advancement were allegations of discrete acts of discrimination rather than part of a continuing hostile work environment. The court further found that these claims were time-barred because Hunter failed to seek EEO counseling within 45 days of any of these discrete acts. Furthermore, the court found that Hunter's hostile-work-environment claim failed because the allegations, even if true, did not constitute a hostile work environment, and that Hunter had not put forth any evidence that Pitts's actions were motivated by Hunter's race, sex, or age. The court further rejected Hunter's argument that more discovery was needed with respect to these claims.

As to Count IV's claim of retaliation, the district court concluded that Hunter had failed to state a prima facie case because none of the alleged actions was sufficiently adverse. The court also found that TARDEC had articulated a legitimate, nonretaliatory reason for each of its actions, and that Hunter had failed to show that any of these reasons was a pretext designed to mask retaliation. It therefore granted summary judgment as to Count IV. Hunter's timely appeal followed.

## II. ANALYSIS

Hunter's claims can best be grouped into three categories. First, he alleged race, sex, and age discrimination based upon what he contends was the repeated denial of promotion and training opportunities. The time frame for these claims is from 1991 to 2004. Second,

he asserted a hostile-work-environment claim based on the alleged harassment between 2002 and 2004 by his supervisor Pitts. Finally, Hunter alleged retaliatory actions by his supervisors after he contacted an EEO counselor in September 2004.

## A.     Counts I, II, and III: denial of promotion and training opportunities

### 1.     *Standard of review*

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks to have the complaint dismissed based upon the plaintiff's failure to state a claim upon which relief can be granted. The court must "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[]." *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal quotation marks omitted). "[E]ven though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### 2.     *Analysis*

Count I, II, and III of the complaint alleged that Hunter was denied sufficient opportunities for career and promotional advancement at TARDEC due to reverse race discrimination, reverse sex discrimination, and age discrimination. The district court dismissed these claims on the grounds that they were time-barred because Hunter had failed to seek EEO counseling within 45 days of any of these discrete acts of alleged discrimination. On appeal, Hunter argues that these claims should have been considered as part of an ongoing pattern and practice of discrimination.

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, and national origin, 42 U.S.C. § 2000e-2, and provides the exclusive remedy for such claims in federal employment. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829-35 (1976).

The ADEA bans age discrimination in employment against persons over 40, 29 U.S.C. §§ 623(a)(1), 631(a), and likewise provides the exclusive remedy for federal-employment age-discrimination claims. *Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006).

"The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in [the EEOC regulations]." *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 2004); *see also Brown*, 425 U.S. at 829-32. Under 29 C.F.R. § 1614.105(a)(1), an aggrieved employee "must initiate contact with a[n EEO] [c]ounselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action" in order to facilitate informal resolution of the dispute. Failure to timely seek EEO counseling is grounds for dismissal of the discrimination claims. *Benford*, 943 F.2d at 612.

"[T]he ADEA provides two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991) (citing 29 U.S.C. §§ 633a(b)). A federal employee may invoke the EEOC's administrative process set forth in 29 C.F.R. § 1614 by seeking EEO counseling within 45 days, filing an EEO administrative complaint with the employing agency, and complying with the remaining steps of the administrative process. *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001) (citing 29 C.F.R. § 1614.105(a)(1)). Alternatively, a federal employee may directly sue in federal district court so long as the employee gives the EEOC notice of an intent to sue within 180 days of the allegedly discriminatory act and then waits 30 days before filing the action. 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a); *Stevens*, 500 U.S. at 6.

The district court dismissed Hunter's race, sex, and age discrimination claims because it determined that these claims were properly considered as discrete acts of discrimination and not as acts constituting a hostile work environment, and because Hunter failed to seek EEO counseling within the 45-days limitation. Hunter concedes on appeal that he did not seek EEO counseling within 45 days of any of these discrete acts. He argues, however, that these acts should have been considered as part of an ongoing pattern and practice of discrimination for which the time bar does not apply.

Contrary to Hunter's argument, the district court was correct in considering his claims of denial of training and promotion opportunities as discrete acts of discrimination. Under Title VII, two types of actions may be brought: (1) "discrete discriminatory acts," and (2) claims alleging a "hostile work environment." *See Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). *Morgan* sets forth a list of discrete acts, which includes "acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.

In contrast, hostile-work-environment claims "involve[] repeated conduct" and require the plaintiff to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 115-16 (internal quotation marks omitted). The failure to promote an employee or select him for a training program is a discrete act that cannot alone amount to a hostile work environment. *See, e.g., Jones v. City of Franklin*, 08-5180, 2009 U.S. App. LEXIS 2226, at *15-17 (6th Cir. Feb. 5, 2009) (distinguishing the plaintiffs' discrete-discriminatory-act claims based on failure to promote from hostile-work-environment claims).

Hunter first sought EEO counseling on September 22, 2004. None of his alleged denials of training and promotion opportunities occurred within the 45 days prior to that date (August 8, 2004). Hunter's claims of discriminatory failure to promote and failure to train were therefore properly dismissed because they were time-barred.

Nor can Hunter avoid the time bar by characterizing his claims as alleging a discriminatory pattern and practice at his workplace. "By their very nature, pattern and practice suits involve claims of class-wide discrimination." *Virostek v. Liberty Twp. Police Dep't/Trs.*, 14 F. App'x 493, 498 n.1 (6th Cir. 2001) (citing *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990)). The Supreme Court has explained that the crucial difference between an individual's claim of discrimination and an action

> alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking.

*Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 876 (1984) (citation and internal quotation marks omitted). The preponderance of the evidence must establish "that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (internal quotation marks omitted).

In his brief, Hunter asserts in a conclusory manner that there is an "ongoing pattern and practice of discrimination." His complaint, however, does not identify any pattern of discriminatory decisionmaking against a class of employees. Instead, it describes a litany of alleged failures to promote and train Hunter that he considers to have been discriminatory. Hunter does not represent a class and has otherwise failed to allege a class-wide discriminatory action. He is therefore asserting only discrete-discriminatory-act claims in Counts I, II, and III that have been time-barred.

Hunter argues, however, that even if Counts I, II, and III are time-barred, he should have been allowed discovery with respect to the period between August 8, 2004 (the 45th day prior to Hunter first seeking EEO counseling) and September 22, 2004 (when he first sought such counseling). He further alleges that events preceding August 8, 2004 are "background evidence" that should also be discoverable. We disagree. The events preceding August 8, 2004 are discrete discriminatory acts that are time-barred, so no amount of discovery would have cured the fatal flaw. With respect to the time period between August 8 and September 22, 2004, no discovery is necessary because Hunter himself would have known if he had applied for any promotion or training opportunities during that period of time. Hunter made no allegations of any such opportunities in his complaint or in his brief on appeal. The district court thus acted properly by dismissing these claims without allowing further discovery.

**B.        Counts I, II, and III: hostile-work-environment claim**

Although Hunter's brief identifies the dismissal of his hostile-work-environment claim as an issue, his brief does not specifically discuss why the district court allegedly erred in granting summary judgment in favor of the government on this claim. Nor does Hunter cite any relevant authority on point. The government's brief, accordingly, does not address the hostile-work-environment issue at all. We therefore consider this issue waived. *See*

*Dillory v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation and internal quotation marks omitted)).

## C.       Count IV: retaliation claim

### 1.       *Standard of review*

We review de novo a district court's grant of summary judgment. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### 2.       *Analysis*

Count IV of the complaint alleges retaliation based upon events that occurred after Hunter complained about TARDEC's purported discriminatory practices. Hunter first contacted an EEO counselor on September 22, 2004. He alleges the following four acts of retaliation after that date: (a) one of his work packages was held up for a week by Pitts on or after September 2004; (b) he was moved to a new work unit by Art Adlam, another of his supervisors; (c) he was required to leave a note whenever he left his work station; and (d) Team Leader Pad Cherukuri told him that any high school kid could perform his job.

Title VII prohibits retaliation against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an allegedly unlawful employment practice. 42 U.S.C. § 2000e-3(a). Under the applicable federal framework, the "anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm.*" Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). To establish a prima facie case of retaliation under Title VII, a plaintiff must prove that

(1) [he] engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted).

After establishing a prima facie case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "The plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Hunter failed to establish a prima facie case for retaliation. Even assuming that all of his allegations are true, and after viewing the facts in the light most favorable to Hunter, his complaint fails to satisfy requirements (2), (3), and (4) as set forth in *Morris*. First, the record fails to indicate that Pitts, Adlam, or Cherukuri even knew that Hunter had contacted an EEO counselor or had filed a formal EEO complaint. There is also no indication of any causal connection between Hunter's initiation of the EEO complaint process and the allegedly adverse employment actions taken by Hunter's supervisors.

More importantly, even assuming that Hunter's supervisors knew of the EEO complaint and wanted to retaliate against Hunter, the actions they undertook failed to rise to the level of "adverse employment actions." In *Burlington Northern*, the Supreme Court defined this type of action as one that "a reasonable employee would have found . . . materially adverse, which in this context means [that the action would] dissuade[] a reasonable worker from making or supporting a charge of discrimination." 548 U.S. at 68 (internal quotation marks omitted). The Court cautioned that "it is important to separate significant from trivial harms." *Id.* "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

All four of Hunter's retaliation claims were of a de minimis nature and amount to nothing more than petty slights and minor annoyances. We conclude that no reasonable jury would find these allegedly retaliatory acts so adverse that they would dissuade a reasonable employee from making a charge of discrimination. With respect to claim (a), Pitts stated under oath that his job was to evaluate the work done by engineers and technicians, and to detect issues or potential problems. He testified that he stopped one of Hunter's work packages because he found that it required more information, and that the issue was resolved in a matter of days. The district court did not find this temporary delay unreasonable, and we agree.

Claim (b)—transferring Hunter to another unit—is likewise insufficient because Hunter has not alleged that being transferred to a new work unit resulted in significantly different responsibilities, a change in benefits, or any other negative effect. In other words, Hunter has not shown that the transfer resulted in the type of "injury or harm" that the Supreme Court in *Burlington Northern* said was necessary to sustain an action under Title VII. *See* 548 U.S. at 67. The record, moreover, shows that Hunter himself desired a transfer because he did not get along with Pitts. This is a legitimate and nonretaliatory reason for the transfer that Hunter has not refuted.

With respect to claim (c), Hunter conceded during his deposition that all members of his team were told that if they were going to leave their desks, they needed to leave a note. Hunter's claim (c) was thus not a retaliatory act that singled him out. Finally, with respect to claim (d), we conclude that Cherukuri's single, isolated remark, insulting as it may be, simply does not rise to the level of a materially adverse employment action. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) (holding that isolated comments and "stray remarks," without more, are insufficient to establish discriminatory intent).

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.