NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0553n.06

No. 10-1256

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DANIEL GALESKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF DEARBORN, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |

Before:       KEITH, CLAY, and COOK, Circuit Judges.

KEITH, Circuit Judge.  Plaintiff-Appellant Daniel Galeski appeals the district court's grant of summary judgment to Defendant-Appellee City of Dearborn as to his claims of same-sex harassment, discrimination and retaliation brought under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Law § 37.2101, *et seq*.  Galeski argues that he suffered sexual harassment by a City of Dearborn employee, and that he was fired by the City in retaliation for his complaints about said harassment.  For the reasons that follow, we AFFIRM the district court's decision.

**I.  BACKGROUND**

Galeski began working for the City of Dearborn as a sound technician specializing in recording at the Community Theater/Recreation Department in August 2001.  Initially, he worked under the supervision of Don Bean, Crew Chief, and Jack Raeburn, General Manager of the Theater.  Though Galeski did not have many complaints about his employment initially, the City of Dearborn

had several issues with Galeski starting soon after his employment began. In September 2002, Galeski received an oral warning for an unspecified occurrence. R. 11, Ex. 13. In February 2004, Raeburn received an anonymous letter, alleging that Galeski had been living in the Performing Arts Center Theater for over six months; that he was using the City's washer and dryer for personal use; and that drugs were being bought and sold on the property (though there was no specific allegation that Galeski was involved in the drug trafficking activity). R. 11, Ex. 7. A copy of this letter was sent to the Mayor's office as well, and in response Debra Walling, Corporation Counsel, sent a letter to Greg Orner, Director of the Recreation Department, on March 4, 2004, which reiterated the City's policy that washing machines should be used for costume cleaning only, allegations of drug use should be reported to the police going forward, and Galeski's hourly wage should not include his transportation time. R. 11, Ex. 8.

In June 2005, Galeski agreed to work as an independent contractor, apart from his employment with the theater, for Jean Zimbalatti to record a dance recital at the theater for pay. Galeski hired two cameramen for the event. However, both left the recital early, preventing Galeski from recording the entire event. Zimbalatti complained to the Department of Recreation, which necessitated Raeburn's involvement to negotiate a settlement. R. 11, Ex. 11, 12; Galeski's Dep. at 22-24. In response to this incident, Raeburn asked Galeski and the other employees to no longer perform outside work at the Theater. R. 11, Ex. 12. Additionally, on May 25, 2006, Galeski received a Notice of Reprimand for missing set up and sound check for one of the Theater's clients on May 15, 2006. R. 11, Ex. 13. Despite these issues, Galeski alleges that he was content with his employment.

In August 2006, Martin Zbosnik took over the position of General Manager at the Theater. Galeski alleges that, beginning in November 2006, Zbosnik repeatedly sexually harassed him such that it created a hostile work environment. For example, in November 2006, Zbosnik, wearing tight jeans, came into Galeski's office and sat on his desk. According to Galeski, Zbosnik demonstrated his attraction to Galeski by revealing the outline of his penis to Galeski through his jeans. Galeski also states that, between November 15 and December 10, 2006, Zbosnik "made frequent visits" to his sound booth. Galeski Dep. at 32. He told Galeski that he previously sold and rented movies, including pornography. Zbosnik also told Galeski of an incident in Atlanta where he was aroused by a man holding him up at gunpoint.

In addition to these conversations, Zbosnik also complimented Galeski on his physical appearance. In March 2007, he twice stopped Galeski, saying, "You have beautiful eyes," and "Your hair is gorgeous today." Galeski Dep. at 45-46. Zbosnik also often gave Galeski snacks, saying, "Here, this is for being a good little boy," or "Here, this is for being a good worker." Appellant's Br. at 10.

Galeski also alleged that Zbosnik teased him about having children with his girlfriend, Simone, asking him, "How are you going to support all her kids, your kids, and the new babies that are coming along . . . with you making less?" When Galeski indicated that he would do DVD projects to make extra money, Zbosnik said "You think so?" He then said, "Baby daddy, baby daddy, wah, wah, wah." Galeski Dep. at 48-49. Zbosnik continued to make condescending and sarcastic remarks to Galeski about the impending birth of his children. Shortly after this incident, Zbosnik issued a memo stating that no one could record any cultural performances or shows at work.

3

Galeski alleges that Zbosnik followed him around at work and outside of work. According to Galeski, Zbosnik rode his bike past Galeski's home. Galeski also alleges that on one occasion the two men rode their bikes to work at the same time, and it made Galeski so uncomfortable that he did not go in to work that day.

Galeski alleges that, in October 2007, Zbosnik observed him leafing through a transgender prostitution service advertisement in a newspaper. Zbosnik then said, "Oh, you like those? I manage a crew of them. I can get you one of those." *Id*. at 73. Galeski walked away disgusted, but never voiced his concern about the comment to Zbosnik or other city employees.

On November 26, 2007, Galeski arrived at work late and without a uniform. Galeski alleges that Zbosnik stopped him at the door, and said "You're out of uniform. . . Nice legs, but you're out of uniform." Galeski told him to "just stop." Zbosnik tried to grab him and said, "What's wrong with you?" Galeski then "blew by him" and went downstairs to put on his uniform. *Id.* at 74. Galeski was reprimanded and Zbosnik issued another Staff Discipline Report to him for violation of the employee dress code. R. 11, Ex. 14.

On December 5, 2007, Galeski received another Staff Discipline Report from Zbosnik, this time for using the Theater for a private after-hours recording session without permission. This notice indicated that any further policy violations would result in his termination. R. 11, Ex. 17.

Two months later, in late February 2008, Galeski attempted to go to the fitness area at work. He was told that he no longer had authorization to use the gym, but he stayed and worked out anyway. The fitness area attendants reported him for violating policy and a formal written reprimand

was produced. Pursuant to the Fitness Center's policy, employees were provided free access to the Center, but the City could revoke this privilege at any time for misconduct. R. 11, Ex. 20.

After all these instances, Galeski wrote his first formal complaint on February 25, 2008 to the Director of the Department of Recreation, Don Bean and the Mayor of the City. The letter stated that Galeski had been verbally sexually harassed by Zbosnik, who had made "sexual advances and flirtatious remarks" to Galeski. He alleged retaliation after the incidents, but did not offer specific examples. On February 28, 2008, Human Resources Analyst Celina Lawlor replied to Galeski indicating that she would investigate the matter.

On March 1, 2008, Galeski worked on a show and failed to put away sound equipment, including microphones and speakers. On March 3, 2008, Galeski received an email from Bean, informing him that he left all the equipment out after the show. Galeski alleges that he called Bean to tell him that another crew member told him to leave the equipment out. Bean then allegedly asked Galeski, "Are you going head-to-head with [Zbosnik]?" Bean told Galeski to meet him in his office. When Galeski arrived, Bean issued Galeski another Staff Discipline Report for failing to complete his work, leaving a drink near the sound equipment, and failing to wear proper dress code attire despite previous warnings. R. 11, Ex. 22. In response, Galeski allegedly stated that "[t]his is blatant retaliation from [Zbosnik]. I'm being harassed." Bean allegedly responded, "No. [Zbosnik] is just trying to make you a better employee."[1] Galeski Dep. at 86-87. On March 4, Galeski hand delivered a second written complaint to the City of Dearborn, asserting that the written reprimand was

---

[1]Galeski also stated on this date that he was "going to the EEOC" with his complaint. [Galeski Dep. at 87]

retaliation for his previous sexual harassment complaint. Additionally, he alleged two instances of other employees being physically violated at work. Appellant's Br. at 16.

On March 6, 2008, the City initiated an investigation of Galeski's allegations. Galeski met with Lawlor and Eric Peterson, Deputy Director of the Recreation Department, to discuss his complaint. At the meeting, Galeski informed his superiors of his interactions with Zbosnik. He told them of the snacks that Zbosnik gave him, and the comments about his hair and his eyes. Galeski complained of his "perk"—access to the gym—being taken away, which Lawlor and Peterson explained was due to the three previous written warnings Galeski received. Galeski requested not to come into contact with Zbosnik.

On March 29, 2008, Galeski attempted to work out in the Fitness Center again, despite knowing that he was prohibited. The Center attendants told him he would have to pay for entrance and he refused. He told them to speak with Peterson. The attendants permitted him to finish his workout, but they issued a formal incident report.

Additionally, at an unspecified date in early April, Galeski complained to Bean that his hours were being reduced because, "[Zbosnik] [took] all the hours down and he [came] up with a new plan how to distribute the hours more evenly." According to Galeski, Bean responded, "If it wasn't for you complaining about [Zbosnik], none of this would be happening." Galeski Dep. at 98.

Human Resources completed its investigation and issued a report on April 10, 2008.[2] While the substance of the report discussed the investigation into Galeski's sexual harassment allegations, the conclusion recommended that the City terminate Galeski's employment. As the report stated:

> I cannot find any corroboration of Dan's claims of sexual harassment . . . Martin is trying to bring order to the [T]heater crew and it seems he is encountering considerable resistance . . . As for Dan, I believe he has been a problem for a long time. He has received little real supervision as Don's style of supervision has been seemingly laissez-faire. There is no indication that Dan will "get with the program" and follow the direction that Martin is taking the [T]heater. I believe it would be in the Recreation's best interest to terminate the employment relationship with Dan.

R. 11, Ex. 23 at 8.

On April 13, 2008, Galeski sent the City a third written complaint. In it, Galeski asserted that he did not agree with the procedure to remove all equipment after a show, and that he was reprimanded for this reason. He complained of another work colleague coming into work drunk and not in dress code, who did not receive a written reprimand, and other employees who retained their privilege to use the Fitness Center despite transgressions. Appellant's Br. at 21. Five days later, on April 18, 2008, the City of Dearborn terminated Galeski's employment.

On December 29, 2008, the EEOC issued Galeski a right to sue letter on this matter. On March 27, 2009, Galeski filed his complaint in the United States District Court for the Eastern District of Michigan, alleging gender based discrimination and retaliation pursuant to Title VII and the Michigan Civil Rights Act. The City of Dearborn filed a motion for summary judgment on

---

[2]Through the course of the City's investigation, they interviewed several employees, including Dave Posigian, regarding Galeski's allegations. According to the City's report, Posigian did acknowledge that Zbosnik once helped him pull up his pants, that he told Zbosnik that he "didn't like" such behavior, and that Zbosnik never did it again.

November 16, 2009. On January 27, 2010, the district court granted the City's motion. The district court found that Galeski failed to establish a prima facie case of discrimination because he failed to allege harassment so severe or pervasive as to create a hostile work environment. Additionally, the court held that Galeski failed to establish a prima facie case of quid pro quo sexual harassment because none of the events or occurrences amounted to sexual advances or requests for sexual favors for which Galeski might lose a privilege or fear termination if he denied them. Finally, the court granted the City's summary judgment motion as to Galeski's retaliation claim, finding that Galeski failed to establish the prima facie case of retaliation and, alternatively, that he failed to produce any evidence that the City of Dearborn's nondiscriminatory reason for discharging him was pretextual. Galeski now timely appeals to this court.

## II. ANALYSIS

On appeal, Galeski makes two arguments. First, he argues that the harassment he alleged was sufficiently severe or pervasive to create an actionable claim for hostile work environment sexual harassment,[3] contrary to the district court's finding. Second, he argues that the district court erred in finding that there was no genuine issue of material fact remaining in dispute concerning his retaliation claim.

---

[3]Though the district court addressed the merits of a potential quid pro quo claim, Galeski fails to assert this claim with any specificity on appeal. Accordingly, it is deemed waived. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005); *Hunter v. Secretary of U.S. Army*, 565 F.3d 986, 995 (6th Cir. 2009).

No. 10-1256
*Galeski v. City of Dearborn*

## A. Standard of Review

We review de novo a district court's grant of summary judgment. *Grace v. USCAR*, 521 F.3d 655, 661 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, "the nonmoving must rebut such a showing by presenting sufficient evidence on which a jury could reasonably find" in his or her favor. *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005). "When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party." *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 409 (6th Cir. 1999); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## B. Hostile Environment Sexual Harassment Claim

Title VII of the Civil Rights Act of 1964 renders it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1).[4] Title VII prohibits discrimination based on sex that creates a hostile or abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "Title VII does not prohibit all

---

[4]Similarly, Michigan's ELCRA guarantees "[t]he opportunity to obtain employment . . . without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status." Mich. Comp. Laws § 37.2102(1). As the district court correctly noted, claims of discrimination brought under the ELCRA are analyzed under the same evidentiary framework used in Title VII cases. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

verbal or physical harassment in the workplace; it is directed only at *discrimination* because of sex."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal quotation marks, brackets and ellipsis omitted). To establish a prima facie claim of hostile work environment same-sex harassment, an employee must establish that (1) he is a member of a protected class, (2) he was subjected to unwelcome sexual harassment, (3) the harassment was based on his sex, (4) the harassment created a hostile work environment, and (5) the employer failed to take reasonable steps to prevent and correct any sexually harassing behavior.[5] *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).

To maintain a hostile work environment claim, the plaintiff must show that "under the totality of the circumstances, the alleged conduct is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Clark*, 400 F.3d at 351 (quoting *Harris*, 510 U.S. at 21). The court may consider a number of factors in making this determination, including: "the frequency of the discriminatory conduct; its severity; whether it

---

[5]Similarly, under the ELCRA, "to establish a prima facie case of hostile work environment sexual harassment, the plaintiff employee must prove (1) that she belonged to a protected group; (2) that she was subjected to communication or conduct on the basis of sex; (3) that she was subjected to unwelcome sexual conduct or communication; (4) that the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with her employment or created an intimidating, hostile or offensive work environment; and (5) respondeat superior." *Elezovic v. Bennett*, 731 N.W.2d 452, 457 (Mich. App. 2007) (citing *Radtke v. Everett*, 501 N.W.2d 155 (Mich. 1993)). "[W]hether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id.* Thus, as further discussed herein, for the same reasons that Galeski's claim fails under Title VII, it also fails under the ELCRA.

is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "In same-sex (as in all) harassment cases, [our determination] requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale*, 523 U.S. at 81. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (internal quotation marks and citations omitted). Such a limitation "ensure[s] that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory conditions of employment." *Oncale*, 523 U.S. at 81. Thus, we must "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788.

Here, the parties dispute whether Galeski met the fourth element of the prima facie case. Assuming that Galeski established all the other elements of this claim, we agree with the district court that the incidents alleged are not severe or pervasive enough such that a reasonable jury could conclude that Defendants created a hostile work environment. Galeski points to Zbosnik twice complimenting him on his eyes or his hair over the course of a two year period. Galeski points to Zbosnik telling him of his pornography collection only once, in December 2006, and then telling him an admittedly crude and inappropriate story of being sexually aroused when he was robbed in Atlanta. Galeski emphasizes on appeal that Zbosnik told him, in October 2007, that he could procure a transgender/transsexual prostitute for him. However, these isolated incidents, considered

11

together, are not severe or pervasiveness enough to establish a hostile work environment claim. *See Clark*, 400 F.3d at 351 (holding that incidents were not severe or pervasive enough to establish hostile work environment claim where the plaintiff alleged that her supervisor "told vulgar jokes," "twice placed his vibrating pager on her thigh" and "pulled at her overalls after she told him she was wearing a thong"); *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 787 (6th Cir. 2000) (holding that incidents were not severe or pervasive enough to establish hostile work environment claim where the plaintiff alleged that her supervisor "frequently told jokes with sexual overtones, once referred to plaintiff as 'Hot Lips,' and several times made comments about [the plaintiff's] state of dress").

Galeski also fails to demonstrate how the alleged incidents interfered with his work. As the Supreme Court explained in *Oncale*, "[t]he prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." 523 U.S. at 81. Though Zbosnik issued Galeski several discipline reports, Galeski concedes that he did the very things for which he was reprimanded. Additionally, the increase in disciplinary reports and Zbosnik's alleged decision to change the hourly schedule support a retaliation claim, not a hostile work environment claim. *See Morris*, 201 F.3d at 790-91 (refusing to include alleged retaliatory conduct in the hostile work environment equation because the plaintiff did not suggest the conduct was committed "because of sex"). Even the revocation of his gym access, though not directly attributed to Zbosnik, would not support Galeski's hostile work environment claim as it was a perk of the job and did not affect his performance at work. Thus, considering the totality of the circumstances, the alleged incidents

amount to no more than several offhand comments and simple teasing in the workplace, outside of the reach of Title VII. We find that the facts alleged here do not satisfy Galeski's prima facie burden and, therefore, AFFIRM the district court's grant of summary judgment to the City of Dearborn.

## C. Retaliation Claim

A separate provision of Title VII prohibits an employer from discriminating against an employee who opposes any practice made an unlawful employment action under Title VII. 42 U.S.C. § 2000e-3(a). "In the absence of direct evidence, we review [Galeski's] retaliation claims under the *McDonnell Douglas* framework." *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 348 (6th Cir. 2008) (citation omitted). In order to establish a prima facie case of retaliation, Galeski must show that: (1) he engaged in a protected activity under Title VII; (2) the City of Dearborn knew he engaged in that protected activity; (3) the City of Dearborn took an adverse, retaliatory employment action against him thereafter, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between his protected activity and the adverse employment action or harassment.[6] *See Randolph*, 453 F.3d at 736.

---

[6]The ELCRA also prohibits employer retaliation for filing a complaint of harassment. MCL 37.2701(a). To make a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *DeFlaviis v. Lord & Taylor, Inc.*, 566 N.W.2d 661, 663 (Mich. 1997). "[I]n order to show causation in a retaliatory discrimination case, plaintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 660 (Mich. 2005) (internal quotation marks and citation omitted). "[T]he plaintiff must show that his participation in activity protected by the [EL]CRA was a significant factor in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v. Kirtland Cmty. Coll.*, 628 N.W.2d 63, 70 (Mich. Ct. App. 2001) (citation and quotation marks

Galeski easily meets the first three elements of a prima facie case of retaliation. He points to three protected activities in which he engaged—namely, filing the three sexual harassment complaints with the City on February 25, 2008, March 4, 2008, and April 13, 2008. His employers were aware of these actions, and nevertheless terminated his employment. His termination constitutes an adverse employment action.

As to the fourth element, the district court held, and the City argues on appeal, that Galeski failed to establish a causal connection between the City discharging him from his employment and his complaints of sexual harassment. "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)*; see also Randolph*, 453 F.3d at 737 ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection."); *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 363-64 (6th Cir. 2001) ("While it is true that temporal proximity alone is insufficient to establish a causal connection for a retaliation claim, there are circumstances where temporal proximity considered with other evidence of retaliatory conduct would be sufficient to establish a causal connection." (internal citations omitted)).

omitted). As discussed above in relation to the Title VII claim, even if Galeski could establish a prima facie claim of retaliation under the ELCRA, he cannot show that the City's nondiscriminatory reason for termination was pretextual. Accordingly, his claim fails under the ELCRA as well.

14

Here, Galeski points to the temporal proximity of his first complaint being filed (February 25th) and his termination on April 18, 2008. Within nine weeks, and just five days after his final complaint, the City of Dearborn terminated Galeski's employment with the Recreation Department despite his employment for almost seven years. In addition, there appear to be several additional indicia of retaliatory conduct that occurred between the time Galeski filed his first complaint and his termination that could be considered "materially adverse." These include Galeski receiving a written reprimand from Bean for failure to put equipment away after a show; Galeski receiving a written warning for using the gym after his privilege was revoked, even though he had used it twice before without any issues; and most significantly, Zbosnik reorganizing the schedule in such a way that it reduced Galeski's hours. As the Supreme Court held in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the anti-retaliation provision "seeks to prevent employer interference with 'unfettered access' to Title VII remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts and their employers." *Id*. (internal citation omitted). Accordingly, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. (citation and internal quotation marks omitted). However, "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*.

A reasonable jury could find that any of the above listed actions could have deterred Galeski from further complaining about sexual harassment. According to Galeski, the soda can for which he was written up was not his, and additionally he offered uncontroverted testimony of another

15

employee who was not reprimanded, despite not wearing his uniform. As for the change in hours, Galeski offered testimony indicating that Zbosnik knew that he needed and intended to take on additional hours to help support his newborn children. In light of this knowledge, the plan to redistribute hours more evenly could be considered a retaliatory action. These indices of retaliation, when combined with the City terminating his employment only nine weeks after his first sexual harassment complaint, may combine to establish the causation prong. However, we need not rule on this matter. *See Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 349 (6th Cir. 2008). As discussed below, even if we assume Galeski did produce sufficient evidence to establish a prima facie case of retaliation, his claim cannot succeed because he is unable to demonstrate that the City's legitimate, non-retaliatory reason for its adverse employment action was pretextual.

Under the *McDonnell Douglas* framework, after the plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times." *Mickey*, 516 F.3d at 526 (citations omitted). If the defendant articulates a legitimate, nondiscriminatory reason for its actions, then the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision. *Hunter*, 565 F.3d 986, 996 (6th Cir. 2009). "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Mickey*, 516 F.3d at 626 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

The City of Dearborn produced a nondiscriminatory reason for its actions: "Galeski's long and ongoing history of misconduct" and many instances of insubordination. Appellee's Br. at 35. As demonstrated by the record, Galeski received numerous written and verbal warnings before he filed his first complaint of sexual harassment.

In response, Galeski fails to make any showing that the City's decision to terminate him was pretextual. Rather, Galeski focuses upon the fact that Human Resources' April 10, 2008 memorandum summarizing its investigation into his sexual harassment claims concluded that Galeski should be terminated from employment with the City. Galeski argues that "[b]ut for Plaintiff's complaints concerning Zbosnik's sexual harassment, discrimination and retaliation that [led] to Defendant's April 10, 2008 report, there would have been no recommendation for Plaintiff's termination. There is absolutely no evidence of record indicating that Defendant [would have] terminat[ed] Plaintiff apart from his complaints about Zbosnik's sexual harassment." Appellant's Br. at 32. However, he fails to provide evidence to support this assertion.

Galeski points to Peterson's statement that Plaintiff's performance as a sound technician was not an issue during the course of the City's investigation of his harassment claim; the City concedes this point and maintains that he was not discharged for his performance as a sound man, but rather for his misconduct and insubordination. Thus, Peterson's statement is unpersuasive. Galeski also points to a statement made by John Smith to other employees the day that Galeski was fired. Smith said "It was [Zbosnik's] idea to terminate [Galeski]. He tried to get Don to write [Galeski] up for all these little things and Don refused to do it and so he went ahead and started reprimanding him personally, following no procedure whatsoever, just handwritten warnings, except for the third one

17

that Don was probably made to do." [Galeski Dep. at 102] However, Galeski's assertion concerning what Smith told other employees cannot be considered on summary judgment because it is inadmissible hearsay. FED. R. EVID. 802; *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (noting that "[a] court cannot rely on unsworn inadmissible hearsay when ruling on a summary judgment motion" (citing *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993)). Thus, Galeski fails to provide any probative evidence that, but for his complaints of sexual harassment, the City of Dearborn would not have discharged him for his problematic employment history and continued issues with the Recreation Department supervisors.

We have previously considered the situation of a problematic employee's retaliation claim. In *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064 (6th Cir. 1990), the plaintiff testified on behalf of a witness bringing a discrimination suit against the defendant. In the three months prior to his giving testimony, the plaintiff received only one disciplinary letter. In the months following his testimony, but prior to his discharge, the plaintiff received six disciplinary letters. However, it turned out that the plaintiff had received disciplinary letters some fifteen times in the year before the complaint was made. As this court explained, "we are not examining the case of a trouble-free employee during the months and years before the incident which he alleges gave rise to a retaliatory motive and subsequent and sudden job warnings by the employer." *Id*. at 1067. And while establishing a prima facie case permits the inference of retaliation, once an employer provides a legitimate reason for the discharge that inference is dispelled unless the plaintiff can show pretext. *Id*. In such cases, the plaintiff must show that "but for" the protected activity, the defendant would not have taken the same action. *Id*. at 1068.

Here, as in *Canitia*, Galeski has a history of violating the City's policies and being insubordinate. Though his previous supervisor, Raeburn, and his direct supervisor, Bean, worked to avoid clashes with management, it appears that the issues that led to Galeski's termination were inevitable once a more strict supervisor arrived at the Theater. Based upon the City's interviews with other employees who noted Galeski's issues with authority, and Galeski's own deposition testimony and written complaints to management which illustrate the same, his job was in danger regardless of his sexual harassment complaints. In light of his repeated issues with failing to wear his uniform and his reaction to his employer revoking his privilege to use the gym, there is no indication in the record that the City of Dearborn's legitimate reasons for discharging Galeski were pretextual or otherwise invalid. Considering the evidence in the light most favorable to Galeski and drawing any reasonable inference in his favor, Galeski fails to sufficiently overcome the City of Dearborn's substantial proof in support of summary judgment. Accordingly, we AFFIRM the district court's grant of summary judgment to the City on Galeski's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendant-Appellee City of Dearborn as to both Galeski's sexual harassment and retaliation claims.