In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2355

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PRINCE A. STEVENSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 3:09-cr-30077—**Richard Mills,** *Judge.*

ARGUED APRIL 2, 2012—DECIDED MAY 14, 2012

Before ROVNER, SYKES, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury found Prince Stevenson guilty of distributing cocaine base (crack), but Stevenson claims that the jury had insufficient evidence to do so. This is a challenging claim to make, of course, because we will overturn a jury verdict for insufficiency of the evidence only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *United States v. Aslan,* 644 F.3d 526, 540 (7th Cir. 2011).

That evidence, which we view in the light most favorable to the government (*Id.*), is as follows: Sometime in 2008, Stevenson and Mark Woods joined forces to sell drugs. Woods had been the drug supplier to a purchaser named Kelli Quincy, to whom he sold drugs every Wednesday and every other weekend. In July 2008, law enforcement officers learned that Woods intended to sell drugs to Quincy near a Walgreens pharmacy in Jacksonville, Illinois. An officer staked out the location and saw Woods and Quincy meet, but did not arrest either of them.

The following month, the same officer observed Quincy's car at Stevenson's residence. As she drove away, another officer stopped her car and found a crack pipe, a small amount of crack, and her young son in the back seat. Quincy quickly confessed that she had been buying crack regularly from Woods and Stevenson and agreed to work as a confidential informant.

In her role as informant, Quincy purchased crack from Stevenson three times under the careful watch of law enforcement. Law enforcement officers executed each controlled buy similarly. The investigators would meet Quincy at a rural location outside of Jacksonville. There, an investigator would take Quincy's purse and place it in his truck and then watch Quincy as she shook out her clothes and turned out her pockets. Another agent would search the entire car and place an audio and video recording device in the back of the car. The officers gave Quincy money for the drug purchase and then trailed her to the Walgreens parking

lot. From there, surveillance officers watched as Stevenson arrived at the parking lot, parked by Quincy's car, entered her car, exited the car, and drove away. Each time, the audio and video equipment caught Stevenson's voice and image. After the exchange, the investigators followed Quincy back to the farm where Quincy turned over the crack and the officers repeated their search of Quincy and the car.

Quincy bought crack in this manner on three occasions. On September 17, 2008, she bought .77 grams of crack and repaid a $90 debt for a total of $190. On September 19, 2008, she bought 1.1 grams of crack for $200, and on September 26, 2008, she paid $200 for one gram of crack.

Stevenson argued to the jury that the government failed to produce sufficient evidence to meet its burden. He contended that in order to convict, the jury would have to believe the testimony of the crack-addicted Quincy, desperate to extricate herself from the bubbling cauldron of her own legal troubles. Stevenson presented a counter-theory that Quincy, looking for a reduced sentence for her own charges, "scraped together some crack" from the floor of her car after she left the farm, and it was this crack that she turned over to law enforcement, claiming it came from Stevenson. (See R. 87, Tr. at 383)[1]. In support of this theory, Stevenson criticized the government for failing to perform a more thorough

---

[1] "R." indicates the record number in the district court. "Tr." indicates the page of the consecutively numbered transcript (which spans several record numbers).

search of Quincy or use a dog to sniff the car before she left, for not positioning a video camera in the front seat of the car, and for not testing the drug baggies for Stevenson's fingerprints.

The government presented a different story to the jury, demonstrating how officers searched Quincy and her car for drugs and contraband before the controlled buy, but found none (although conceding that they did not check throughly Quincy's undergarments or conduct a pat-down search). The government then showed the jury surveillance tape of Quincy meeting Stevenson in a Walgreens parking lot, with Stevenson pulling up next to Quincy's car, getting in the car and exchanging words indicative of a drug deal. "I won't be smoking all of this," Quincy says. "Okay," Stevenson replies. During the next transaction, she promises him that he is going to make more money selling drugs to her at a later date. He replies, "Right, I'm gonna—I make money every day with or without you." Finally, when she suggests that the amount looked small by saying, "Oh, good, we get little baggies," Stevenson responds, "No, it's good stuff. No that's good stuff." After the brief exchanges, he quickly leaves the car. Quincy arrived back at the farm without the money and with the drugs in hand. Finally, the government presented evidence that the drugs tested positive for crack cocaine.

In order to overturn Stevenson's conviction, we would have to conclude that no reasonable jury could have believed the government's version of events over Stevenson's version. *United States v. Durham*, 645 F.3d 883,

892 (7th Cir. 2011), *cert. denied*, 132 S.Ct. 1538 (2012). More accurately, if we conclude that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt, then the conviction must be upheld. *Id.* Only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt can Stevenson's conviction be overturned. *Id*.

The jury was well-informed that Quincy was a drug addict, that she had received immunity, and that she received $220 for her participation as an informant. The court admonished the jury that it might "give her testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care." (R. 44, p. 143). The jury was similarly informed that Mark Woods had agreed to cooperate with the government in the hope of receiving a reduced sentence for his crimes, that he had served four prior prison terms, that he previously had been convicted of selling illegal drugs, and that his testimony should also be considered with caution and great care. Despite all of this, the jury chose to believe Quincy's and Woods' testimony, or at least believed that their testimony, along with the other evidence, was sufficient to prove Stevenson's guilt beyond a reasonable doubt. It is the jury's job, and not ours, to gauge the credibility of the witnesses and decide what inferences to draw from the evidence. *United States v. Mandel*, 647 F.3d 710, 717 (7th Cir. 2011). We do not second guess such determinations on appeal. *United States v. Boisture*, 563 F.3d

295, 298 (7th Cir. 2009). This is particularly so where the jury has been properly informed through cross-examination, jury instructions, or both, about drug use, criminal background, and alternative motivation. *See*, *e.g.*, *United States v. Bailey*, 510 F.3d 726, 734 (7th Cir. 2007); *United States v. Wilson*, 31 F.3d 510, 514 (7th Cir. 1994) (stating that this court will uphold a conviction "even if the evidence is totally uncorroborated and comes from an admitted liar, convicted felon, large-scale drug dealing, paid government informant.")

> A prophylactic rule that drug-using witnesses are per se unbelievable would derail most drug prosecutions which frequently involve, of necessity, the testimony of drug users. These witnesses' shortcomings must be accounted for through cross-examination, not an exclusionary rule. Accordingly, we will not upset the jury's decision to credit their testimony.

*Bailey*, 510 F.3d at 734.

Stevenson acknowledges that a government witness is not considered unbelievable by law merely because of drug use, but rather only when it is either physically impossible for the witness to have seen what she claims to have seen or when it is impossible for the incident to have occurred at all. *Id.* at 734-35; *United States v. Hayes*, 236 F.3d 891, 896 (7th Cir. 2001). Having so conceded, Stevenson goes on to argue that because Quincy was not thoroughly searched, baggie fingerprints were not obtained, and a drug-sniffing dog did not search the car, Quincy's testimony was "incredible."

(Stevenson Brief at 15).[2] These factors may point to weaknesses in the government's case, but surely do not make it impossible for the drug transactions to have occurred or for Quincy to have seen it. And after considering the minor weaknesses in the government's case, the jury still found sufficient evidence to convict beyond a reasonable doubt.

This was not a close case where a reasonable jury might have decided the case either way. Stevenson's version of events required the jurors to formulate their own scenario to explain the otherwise odd meeting between Stevenson and Quincy in the Walgreens parking lot, and to conclude that a crack addict would have "leftover" crack sprinkled about the floor of the car. The government, on the other hand, had surveillance footage, a cooperating informant, and drugs in hand. We would venture a guess that if the case were tried ten times, ten juries would come to the same conclusion. Fortunately, however, this is not the calculus we have to

---

[2] Since we know that Quincy frequently and recently had crack and crack paraphernalia in the car, we suspect that a drug-sniffing dog would have alerted to crack residue in the car in any event, and thus would not have provided much helpful information. *See United States v. Ruiz*, 664 F.3d 833, 841 n.2 (10th Cir. 2012) ("Drug dogs can detect narcotics residue that is left on objects that have come into contact with drugs, even though no seizable quantity of drugs has been found"); *United States v. Cooks*, 168 F. App'x 93, 96 (7th Cir. 2006) (recognizing that dogs may alert to drug residue even where the drugs themselves are no longer present).

make. If even one rational jury could find, beyond a reasonable doubt, that Stevenson sold crack cocaine to Quincy, we must uphold Stevenson's conviction on appeal; and we do.

Stevenson also argues that the court abused its discretion in sentencing him to 158 months of incarceration—eight months above the recommended guidelines—maintaining that the disparity between his sentence and that of his business partner, Woods, who received only 134 months, undercuts the sentencing guidelines' goal of uniformity. This argument can be addressed in short order, first, because Stevenson failed to make it in the district court and we therefore review it for plain error only. *United States v. Peugh*, 675 F.3d 736, 740 (7th Cir. 2012). Moreover, defendants who confess guilt, plead guilty, and cooperate with an investigation simply are not similarly situated to those who force the government to prepare for and go to trial. In other words, a sentencing difference is "not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). *See also United States v. Shamah*, 624 F.3d 449, 460 (7th Cir. 2010) (noting that although one defendant would serve much less time for equally culpable conduct, the disparity was not inappropriate given the defendant's guilty plea, cooperation with the government, and testimony at trial against his fellow officer"); *United States v. Statham*, 581 F.3d 548, 556 (7th Cir. 2009) (explaining that different members of the conspiracy are not similarly situated where some enter plea agreements, cooperate in the investigation, and have

less extensive criminal histories, and there is thus nothing unreasonable about the fact that the sentences they received were also different); *United States v. Haynes,* 582 F.3d 686, 704-05 (7th Cir. 2009) (noting that it is commonly understood that defendants who plead guilty typically receive a lesser sentence than those who do not).

Furthermore, although Stevenson does not object to the reasonableness of the sentence in more general terms, we note that the district court considered the factors required by 18 U.S.C. § 3553, and adequately explained its slightly above guidelines sentence, emphasizing Stevenson's extensive history of criminal conduct (more than twenty other offenses), his relatively short period of actual punishment, his use of numerous aliases, his extremely high likelihood of recidivism, and the audacity of dealing drugs in a public place frequented by law-abiding citizens. Stevenson's sentence was not unreasonable as compared to Woods' sentence or for any other reason.

For the reasons explained above, the decision of the district court is affirmed.