*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0001p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SHERYL TAYLOR,

　　　　　　　*Plaintiff-Appellant*,

　　　　*v.*

TIMOTHY GEITHNER, Secretary, Department
of Treasury,

　　　　　　　*Defendant-Appellee.*

No. 11-6122

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:08-cv-2735—Samuel H. Mays, Jr., District Judge.

Argued: October 4, 2012

Decided and Filed:  January 2, 2013

Before:  MERRITT, MOORE, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** David H. Shapiro, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant.  Harriett Miller Halmon, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.  **ON BRIEF:** David H. Shapiro, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant.  Harriett Miller Halmon, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court in which MERRITT, J., joined, and McKEAGUE, J., joined in part. McKEAGUE, J. (pp. 16–21), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge.  At issue in this appeal is a matter of first impression for this court:  whether Congress has waived sovereign immunity for breach-of-settlement-agreement claims brought under Title VII against the federal

1

government as employer. Plaintiff-Appellant Sheryl Taylor, an employee of the Internal Revenue Service ("IRS"), brought breach-of-settlement-agreement and retaliation claims against Defendant-Appellee Timothy Geithner based on alleged noncompliance with the settlement agreement by the IRS and on a series of purported retaliatory actions taken by her supervisor. The district court dismissed the breach-of-settlement-agreement claim for lack of subject-matter jurisdiction and granted Geithner's motion for summary judgment on the retaliation claim. Taylor appeals both determinations.

Because Congress has not expressly waived sovereign immunity for breach-of-settlement-agreement claims, we **AFFIRM** the district court's dismissal for lack of subject-matter jurisdiction on that claim. However, Taylor has produced sufficient evidence to establish a prima facie case of retaliation, and we therefore **REVERSE** the district court's grant of summary judgment to Geithner on Taylor's retaliation claim. We **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

Sheryl Taylor is an employee of the IRS. In early 2004, Taylor began applying for a series of promotions and transfers, and she was rejected from all until she received a promotion on September 17, 2006. On June 25, 2004, after being denied a promotion, Taylor filed her first discrimination complaint with the agency. R. 63-10 (Individual Compl. of Employment Discrimination at 1–3) (Page ID #570–72). In July 2004, Taylor was assigned to work in a unit supervised by Ethel Shields, where Taylor remained until September 17, 2006. R. 53-1 (Recommendation Email at 1) (Page ID #443); R. 63-1 (Shields Decl. ¶ 4) (Page ID #539). During her time working in this unit, Taylor alleges that Shields took several retaliatory actions against Taylor, including written reprimands, a three-day suspension without pay, and providing negative references for Taylor to prospective employers, which in turn, Taylor alleges, caused her to have been rejected from fifty-two positions. Based on these alleged actions, Taylor filed additional complaints with the agency for retaliation.

On July 19, 2005, the IRS and Taylor entered into a settlement agreement resolving Taylor's April 13, 2005 Equal Employment Opportunity ("EEO") pre-complaint of discrimination. R. 53-1 (Resolution Agreement at 1) (Page ID #444). The agreement required the IRS to remove records of Taylor's three-day suspension from specific files and required Taylor to waive further litigation on this claim. *Id.* at 1–2 (Page ID #444–45). It also contained procedures by which Taylor could report noncompliance with the settlement agreement by the IRS. *Id.* These procedures track the language of 29 C.F.R. § 1614.504, a key provision discussed below.

On August 18, 2005, Taylor took advantage of these procedures and sent a letter to the agency alleging noncompliance by the IRS with the settlement agreement. *See* R. 53-1 (Department of Treasury 2006 Final Agency Decision at 1) (Page ID #449). Specifically, Taylor contended that the IRS did not remove the record of the three-day suspension from her Time and Attendance file. *Id.* On November 1, 2006, the agency issued a decision concluding that although the IRS had breached the referenced portion of the settlement agreement, the IRS was currently in compliance because it had removed the record upon receiving this inquiry. *Id.* at 2 (Page ID #450). The final agency decision contained a statement regarding notice of appeal rights, which cited § 1614.504. *Id.* Taylor later filed a second complaint with the agency based on the same allegations, and this complaint was similarly denied. R. 53-1 (Department of Treasury 2008 Final Agency Decision at 1) (Page ID #465). Taylor did not appeal either decision.

On October 22, 2008, Taylor filed a complaint in the U.S. District Court for the Western District of Tennessee alleging a retaliation claim against Geithner under 42 U.S.C. § 2000e-16(a). R. 1 (Compl.) (Page ID #1–5). On January 20, 2009, Taylor amended her complaint to include a breach-of-settlement-agreement claim. R. 5 (Am. Compl. at ¶¶ 23–24) (Page ID #18–19). Geithner filed a motion to dismiss Taylor's breach-of-settlement-agreement claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and a motion for summary judgment on Taylor's retaliation claim. R. 53 (Def.'s Mot. to Dismiss & Mot. for Summ. J. at 1) (Page ID #383). The district court granted Geithner's motions as to both claims and

subsequently denied Taylor's Rule 59(e) motion to amend or alter the judgment. *Taylor v. Geithner*, No. 08-2735, 2011 WL 2669061 (W.D. Tenn. July 6, 2011); R. 100 (Order Denying Plaintiff's Mot.) (Page ID #865).

## II. BREACH-OF-SETTLEMENT-AGREEMENT CLAIM

We review de novo a dismissal for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009). When the district court rules on a factual challenge to subject-matter jurisdiction, however, we review the factual findings for clear error. *Id.*

At issue is whether Congress has waived sovereign immunity for breach-of-settlement-agreement claims brought under Title VII against the federal government as employer. "The United States, as sovereign, is immune from suit save as it consents to be sued . . . ." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "The doctrine of sovereign immunity serves as a bar to suit against the United States unless the government has explicitly waived sovereign immunity. A waiver of sovereign immunity must be clear, express, and unambiguous; it cannot be implied from vague language." *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1325 (6th Cir. 1993) (internal citations and quotation marks omitted). In the Title VII context, it is clear that Congress has waived sovereign immunity for discrimination actions brought against the federal government; however, we have not yet reached whether this waiver extends to breach of a settlement agreement entered into by an employee and the federal government that is based on an underlying discrimination claim. *See Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003) ("Title VII of the Civil Rights Act of 1964 . . . as amended by the Equal Employment Opportunity Act of 1972 . . . provides the exclusive judicial remedy for claims of discrimination in federal employment.").

The EEOC has promulgated a regulation that squarely addresses how to report agency noncompliance with a settlement agreement. 29 C.F.R. § 1614.504. This regulation clearly outlines the agency procedures available to a complainant, yet it remains silent as to whether a complainant may seek further remedies, such as appealing

to federal court. Taylor and Geithner construe this silence differently; however, because an express waiver is required in order to waive sovereign immunity, we adopt Geithner's position.

Under § 1614.504, a complainant must notify the agency EEO director in writing of the alleged noncompliance, requesting either specific implementation of the agreement or a reinstatement of the underlying complaint. *Id.* § 1614.504(a). If the complainant does not receive a timely decision from the agency or is not satisfied with the decision made by the agency, she may appeal to the EEOC. *Id.* § 1614.504(b). Given this language, it is clear that a plaintiff could not bring a breach-of-settlement-agreement claim in federal court prior to exhausting the avenues provided in § 1614.504, and at oral argument Taylor clarified that she is not attempting to raise such a claim.

Rather, Taylor brings the breach-of-settlement-agreement claim under Title VII, which raises the more nuanced issue as to whether a plaintiff who has exhausted her administrative remedies may file a civil action for breach of settlement agreement in federal court under 42 U.S.C. § 2000e-16(c).[1] Geithner counters that this provision does not apply to breach-of-settlement-agreement claims, and, even if it did apply, Taylor has not timely filed her claim, as required by the provision. Appellee Br. at 10–13, 13 n.2. In contending that Title VII encompasses breach-of-settlement-agreement claims, Taylor relies on out-of-circuit cases supporting breach-of-contract claims between private employees and employers, arguing these cases evince a legislative history that strived to make voluntary compliance as the primary method of resolving Title VII claims. Appellant Br. at 14–16. Geithner argues that no statute or regulation waives sovereign immunity and relies upon *Frahm v. United States*, 492 F.3d 258 (4th Cir. 2007); *Munoz v. Mabus*, 630 F.3d 856 (9th Cir. 2010); and *Lindstrom v. United States*, 510 F.3d 1191 (10th Cir. 2007). Although Taylor raises understandable concerns with such an interpretation, we find Geithner's arguments to be more persuasive given the specificity

---

[1] Section 2000e-16(c) provides that an employee may file a civil action "[w]ithin 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint." Section 2000e-16(a)'s prohibition on discriminatory practices includes executive agencies.

with which Congress must waive sovereign immunity and the lack of such an express waiver in the plain language of the statute and regulation.

Although focusing on different aspects of 29 C.F.R. § 1614.504 and 42 U.S.C. § 2000e-16(c), our sister circuits each conclude that, based on the plain language of the regulation and the statute, Congress did not waive sovereign immunity. In *Lindstrom*, the Tenth Circuit affirmed the district court's dismissal for lack of subject-matter jurisdiction, explaining that § 1614.504(a) does not permit federal court actions to enforce a settlement agreement. 510 F.3d at 1194. The court determined that sovereign immunity had not been waived given that "[t]he regulation does not authorize a suit to enforce the settlement agreement but rather only the reinstatement of the original discrimination complaint." *Id.* Under such an interpretation, therefore, a complainant may resolve his claims of settlement noncompliance within only the agency procedures; the alternative remedy is to reinstate the underlying discrimination claim, which is reviewable by a federal court.

In *Munoz*, the Ninth Circuit similarly held that sovereign immunity had not been waived for breach-of-settlement-agreement claims. 630 F.3d at 864. The Ninth Circuit concluded that because the plain language of § 1614.504 is silent regarding civil judicial actions and because a waiver of sovereign immunity must be expressed unequivocally, the federal courts lacked jurisdiction over this claim. *Id.* at 862; *see also id.* at 864 ("Congress, while encouraging resolution of Title VII complaints through predetermination settlement agreements, . . . has nonetheless not provided for enforcement of such agreements in federal court.") (internal citations omitted). The court further reasoned that "§ 1614.504 allows an employee alleging noncompliance to choose between two exclusive remedies, namely specific performance or reinstatement of the original discrimnation complaint." *Id.* at 862. Moreover, the court explained that under Title VII and its regulations, the right to civil appeal is based on the nature of the underlying grievance. *Id.* at 863. By entering the settlement agreement, Munoz withdrew his underlying complaint, which cannot then be the source of jurisdiction. *Id.*

In *Frahm*, the Fourth Circuit concluded that Title VII's statutory waiver of sovereign immunity does not extend to monetary claims against the federal government for a breach of a settlement agreement. 492 F.3d at 262. In reaching this conclusion, the court reasoned that "[b]ecause neither the settlement agreement nor a statute allow Miss Frahm to sue the government for breach of the settlement agreement, her action was properly dismissed." *Id.* The court further explained that the specific limitations upon remedies for breach of settlement agreements set forth in 29 C.F.R. § 1614.504(a) serve as additional grounds for dismissal. *Id.* at 262–63. Additionally, *Frahm* observes that the regulation provides two remedies for breach—specific performance of the settlement agreement or reinstatement of the original complaint. *Frahm*, 492 F.3d at 263 ("By its plain language, the regulation permits an employee who claims a breach of a Title VII settlement agreement to elect between only two options.").

The support for Taylor's arguments, on the other hand, is weak. In essence, she offers only equitable and policy-based explanations as to why review of breach-of-settlement-agreement claims by a federal court is desirable. Taylor's arguments, although not inaccurate, do not overcome the obstacle of sovereign immunity. If Congress has not waived sovereign immunity, then we cannot consider the merits of a claim. Taylor does not provide any support for her contention that Congress has waived sovereign immunity, and she does not have an effective response to the distinction drawn in *Munoz* between claims based in contract and claims based in discrimination. The regulation does not authorize civil actions, and the final agency decision and settlement agreement, both provided to Taylor, echoed this language. Further, nothing in 42 U.S.C. § 2000e-16(c) indicates that it is intended to waive sovereign immunity for claims other than discrimination.

Taylor's strongest argument—that such a construction of Title VII would effectively bar federal review of breach of settlement claims—is ultimately unpersuasive in light of the protections offered in 29 C.F.R. § 1614.504. Section 1614.504 allows a complainant either to seek injunctive relief, i.e., specific performance of the settlement agreement, within the agency structure or to request what is essentially an unraveling of

the settlement agreement so that the complainant can pursue the underlying discrimination claims, which can be reviewed in federal court.  This is certainly not the most direct form of judicial review of agency decisions; however, it relieves the concern raised by Taylor that an agency could breach a contract without any consequences or review by a federal court.  Further, there is no evidence in this case that this system is dysfunctional in any way.  In fact, the evidence illustrates the opposite.  Upon receiving Taylor's complaint, the agency investigated the allegations, confirmed the agency's noncompliance, and corrected the problem.

In sum, Taylor cannot point to an express waiver of sovereign immunity concerning breach-of-settlement-agreement claims under Title VII.  The regulation 29 C.F.R. § 1614.504 provides clear instructions as to the exclusive procedures by which a complainant may seek relief—specific performance of the settlement agreement or reinstatement of the original complaint.  We therefore join our sister circuits and affirm the district court's dismissal of this claim for lack of subject-matter jurisdiction.

## III.  RETALIATION CLAIM

We review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).  We review the evidence and draw all inferences in the light most favorable to Taylor as the nonmoving party. *Id.*  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Title VII provides that "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  Additionally, Title VII specifically proscribes retaliation, stating that it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* § 2000e-3(a).

A plaintiff "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *see also Spengler v. Worthington Cyclinders*, 615 F.3d 481, 491–92 (6th Cir. 2010) (applying the *McDonnell Douglas* framework to a retaliation claim). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted). Taylor does not present direct evidence of retaliation, and, therefore, she must demonstrate by a preponderance of the evidence four elements: (1) she engaged in a protected activity under Title VII, (2) the exercise of protected rights was known by Shields, (3) Shields took adverse employment action against Taylor, and (4) there was a causal connection between the adverse employment action and the protected activity. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995–96 (6th Cir. 2009). In their briefs, the parties do not dispute that Taylor engaged in protected activity[2] or that Shields was aware of Taylor's engagement in these activities.[3]

In order to establish an adverse employment action, Taylor "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (internal quotation marks omitted). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Further, the Supreme Court has recognized that actions typically construed as nonmaterial could rise to the level of an adverse employment action when

---

[2]The protected activity includes the complaints discussed with respect to the breach of settlement agreement, as well as the EEO complaint filed on June 25, 2004, alleging discrimination based on age, race, sex, religion, physical or mental disability, and retaliation; and the complaint to the Department of the Treasury on September 3, 2004, alleging discrimination on the same bases, as well as retaliation for the June 25, 2004 complaint. R. 63-10 (Individual Compl. of Employment Discrimination at 1–2) (Page ID #570–71); R. 63-11 (Individual Compl. of Employment Discrimination at 1–2) (Page ID # 575–76).

[3]At oral argument, Geithner appeared to dispute whether Shields knew of the activity. This was improper, given the concession in his brief. Appellee Br. at 16–17.

considered in context, such as a change in the work schedule of a young mother with children in school. *Id.* at 69 ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

In her opposition brief to Geithner's motion for summary judgment, Taylor argued that the following actions constituted adverse employment actions: Shields's initial refusal to provide Taylor a recommendation letter for the Presidential Classroom Program, Shields's negative reference given to an employee of Documented Reference Check ("DRC"), Taylor's unsuccessful applications to fifty-two positions within the IRS, and the failure to remove the record of her three-day suspension from her personnel records at OPM. R. 63 (Pl.'s Opp'n to Def.'s Mot. at 18) (Page ID #531). Taylor identified additional actions in the portion of her opposition brief arguing the causal connection between the filing of her complaints and the adverse employment actions, including two written reprimands and the three-day suspension. *Id.* at 19–21 (Page ID #532–34). The district court concluded that only the three-day suspension was an adverse employment action. *Taylor*, 2011 WL 2669061, at *14.

Many of these alleged actions are based on inadmissible or unauthenticated evidence or do not qualify as adverse actions. The December 1, 2005 email received by Taylor from Shields, for example, does not by itself constitute an adverse employment action. The email states:

> Sheryl I have not received confirmation that the IRS will participate in the Presidential Classroom Program. There are no approvals for travel unless Mission Critical for IRS (SB/SE). I will not provide a letter of recommendation because in my observation you have not demonstrated the skills needed to participate in this program. My concerns are your ability to effectively communicate your meet and deal skills and your interrelationship skills that I deem necessary for this type of assignment.

R.53-1 (Email at 1) (Page ID #442). The following day, Shields retracted this statement and sent a recommendation to the Presidential Classroom Program on behalf of Taylor. Given these subsequent events, it is unclear how Taylor was harmed by this letter and

why it would have dissuaded her from filing discrimination complaints. Unlike with the fifty-two rejections, Taylor makes no serious argument in support of this being an adverse action, and there is affirmative evidence that she was not actually harmed. Therefore, Taylor has not shown that this email, in and of itself, is an adverse employment action.

Further, the DRC transcript[4] cannot be considered because it was unauthenticated at the time of the district court's initial order. Taylor did not attempt to authenticate this document until her Rule 59(e) motion, in which she provided the testimony of Michael Ranking, the chief service officer of DRC, from the EEO hearing. R. 94-2 (Rankin Tr. at 191–92) (Page ID #804–05). Taylor does not respond to Geithner's objection, nor does she indicate that the testimony was, in fact, filed on the docket prior to or in conjunction with her opposition brief to Geithner's motion for summary judgment. *See Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 123 (6th Cir. 1982) ("However, we find no abuse of discretion in the district court's determination that the evidence would not be considered because it was not newly discovered . . . ."). Taylor therefore cannot rely upon this evidence. *See* Fed. R. Civ. P. 59(e).

Taylor's statement in her declaration that she unsuccessfully applied for fifty-two positions within the IRS can be considered. Taylor avers that "[b]ased on documents that I had in my possession and based on documents that I received in discovery in this case, I have identified 52 positions in the [IRS] for which I submitted unsuccessful transfer or promotion applications after January 1, 2004." R. 63-9 (Taylor Decl. ¶ 13) (Page ID #567). Taylor attempts to supplement this declaration with four IRS Roster Standing Notifications from August 2005 verifying receipt of her application and indicating her standing as first among applicants in each applicant pool. R. 94-1 (Roster Standing Notifications) (Page ID #798–801). For the same reasons discussed in conjunction with the DRC transcript, though, these documents cannot be considered.

---

[4]When called by DRC, a company hired by Taylor to perform fake reference checks, Shields stated she would not hire Taylor if she were a potential employer and elaborated on Taylor's interpersonal deficiencies. R. 63-12 (DRC Transcript at 3–4) (Page ID #581–82).

Taylor did not present these to the district court until her Rule 59(e) motion and has not offered any explanation curing this deficiency.

The three-day suspension is well documented in this action, but it is inadmissible for purposes of showing retaliation. *See also* R. 63-2 (Acklin Letter) (Page ID #544–45) (sustaining the implementation of Taylor's three-day suspension). Although neither party raised this issue, it is important to note that the three-day suspension was not reviewed by the EEOC in its decision. R. 53-1 (EEOC Decision) (Page ID #472–85).[5] Geithner makes a different argument in his brief, that Taylor waived her right to bring a substantive claim based on the three-day suspension when she signed the settlement agreement with the IRS. Appellee Br. at 23–25. On either basis, this evidence cannot be considered on the retaliation claim.

Taylor also provides the two reprimands, one of which, dated September 27, 2004, documents an incident in which Taylor contacted upper management in lieu of following the chain of command, and the other, dated April 20, 2005, details an incident in which Taylor was observed using her cellular phone in the work area. R. 63-3 (Shields Email at 1) (Page ID #547); R. 63-4 (Cellular Phones Letter at 1) (Page ID #549). Each of these documents warned that further incidents of this nature could lead to disciplinary action. R. 63-3 (Shields Email at 1) (Page ID #547); R. 63-4 (Cellular Phones Letter at 1) (Page ID #549). We may consider these documents; however, neither of these amounts to an adverse employment action. *See, e.g.*, *Creggett v. Jefferson Cnty. Bd. of Educ.*, No. 11-6375, 2012 WL 3104508, at *3 (6th Cir. Aug. 1, 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action."). Although certain written reprimands could rise to the level of an adverse employment action, the written reprimands given here would not have dissuaded a reasonable worker from making a claim of discrimination. There is no

---

[5]Taylor filed this civil action within ninety days of the EEOC decision, as required under 42 U.S.C. § 2000e-16(a). This decision is rarely referenced in the parties' briefs and the district court order. The EEOC concluded that Taylor failed to show that she was subjected to retaliation. R. 53-1 (EEOC Decision at 13) (Page ID #483).

evidence in the record that any disciplinary action resulted from these letters, or that these letters were related to a larger pattern of intimidation by constantly reprimanding Taylor, for example.

The admissible documents constitute sufficient evidence to support Taylor's prima facie case. To begin, Taylor's averment that she applied for and was rejected from fifty-two positions is plainly an adverse employment action under binding precedent. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Hunter*, 565 F.3d at 994 (listing "termination, failure to promote, denial of transfer, or refusal to hire" as discrete acts under Title VII) (internal quotation marks omitted).

Additionally, we have held that giving a poor reference is an adverse employment action. *Abbott*, 348 F.3d at 543. Geithner argues that *Abbott* is distinguishable from this case. He contends that unlike in *Abbott*, there is no direct evidence of Shields having given a poor reference regarding one of the positions from which Taylor was rejected. This argument is unconvincing; as discussed above, circumstantial evidence is sufficient to establish a prima facie case under the *McDonnell Douglas* framework. Taylor has presented evidence demonstrating that she applied for and was rejected from fifty-two positions within the IRS and that, during the same time period, Shields gave Taylor a negative reference for the Presidential Classroom Program. Geithner also attempts to distinguish this case by providing evidence that Shields subsequently gave positive reviews of Taylor in their internal review program. However, the fact that Shields gave Taylor positive reviews in certain instances does not negate the evidence of a negative review. Moreover, to the extent that this merges into evidence of a nondiscriminatory reason, it would be inappropriate to address such evidence at this stage: "[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir.

2003) (en banc).  In sum, Taylor presents enough to satisfy the low prima facie evidence burden with respect to both.

In order to establish a causal connection, Taylor "must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott*, 348 F.3d at 543.  "Accordingly, at the *prima facie* stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." *Nguyen*, 229 F.3d at 566 (internal quotation marks omitted).  One way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse employment actions and the protected activity.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009).  Although Geithner argues more than temporal proximity is required, we have held that more evidence is required only when some time has passed.  *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  In other words, if there is a very close temporal proximity, then no other evidence is needed.

Taylor applied for and was rejected from fifty-two jobs during the same two-year period as when she engaged in protected activity by filing several discrimination complaints.  Although we do not have the exact dates on which she applied for each of these jobs, the numbers allow us to assume that she applied for an average of at least two positions per month during the same time period in which she filed three discrimination complaints.  There is therefore a complete temporal overlap in the rejection from these positions and the protected activity, which satisfies the standard we set forth in *Mickey*.  Further, any negative reference given by Shields to one of these prospective employers would necessarily be nearly contemporaneous with Taylor's application for the position.  In other words, the temporal proximity analyses for both the rejections from the fifty-two position and any negative references given in connection with the fifty-two applications do not differ.  Additionally, assessing the temporal proximity based solely on the date

of the email would be simplistic and incorrect. The facts show that at the same time and shortly after Taylor filed discrimination-based complaints with the agency, she was rejected from fifty-two positions within the same agency and, when requesting a recommendation from her unit supervisor, was given a negative reference. This is sufficient to establish a prima facie case under the *McDonnell Douglas* burden-shifting analysis, which is the sole issue before us. We therefore reverse the district court's grant of summary judgment on the retaliation claim.

## IV.  CONCLUSION

For the reasons stated, we **AFFIRM** the district court's dismissal of Taylor's breach-of-settlement-agreement claim and **REVERSE** the district court's grant of summary judgment to Geithner on Taylor's retaliation claim. We **REMAND** for further proceedings consistent with this opinion.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

McKEAGUE, Circuit Judge.  I agree with the majority that Congress has not expressly waived sovereign immunity for breach-of-settlement-agreement claims and that we should affirm the district court on that issue.  However, because Taylor has not brought sufficient evidence that she suffered an adverse action or that any adverse action was causally linked to her protected activities, I would also affirm the district court's grant of summary judgment as to Taylor's retaliation claim.

**I.**

**A.**

While the majority correctly states that summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law,  FED.R.CIV.P. 56(c),  and that we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986),  for an issue of fact to be genuine, the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 US 574, 586-587 (1986).  In this case, Taylor has not carried that burden.

As the majority notes, the only elements of the prima facie case at issue here are whether there was an adverse action taken against Taylor and whether Taylor established a causal link between any adverse action and her protected activity.  The majority concludes that there were two adverse actions here: (1) "Taylor's averment that she applied for and was rejected from fifty-two positions," and (2) an imaginary negative recommendation from Taylor's supervisor for one of those 52 positions.

In a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009).  "The

antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). It is not at all clear how either of the adverse actions found by the majority here satisfies these requirements.

**B.**

With respect to the 52 applications, Taylor's declaration filed in her response to Geithner's motion for summary judgment ambiguously states, "I have identified 52 positions in the Internal Revenue Service . . . for which I submitted unsuccessful transfer or promotion applications after January 1, 2004." The majority mischaracterizes Taylor's statement to mean that "she applied for and was rejected" from those positions. But that is not what Taylor stated. The fact that Taylor was "unsuccessful" in her applications could mean any number of things, including that her application was untimely, or she was not qualified for the position, or that the position had already been filled.

Notwithstanding this misconstruction of Taylor's non-specific declaration, the majority rightly notes that apart from Taylor's own self-serving statement, she has not adduced any admissible evidence regarding the timing of the alleged applications, whether she was even qualified for the jobs she applied for, whether the jobs were promotions or offered some other material benefit to Taylor, or whether in fact she really was rejected. Taylor tried to supplement her declaration with four Roster Standing Notifications from four different jobs she applied for, but the majority admits we are not even considering those documents here because they were not presented to the district court until Taylor filed her motion for reconsideration.

Despite this acknowledgment by the majority that Taylor's claims are completely unsubstantiated, the majority still concludes that "Taylor's averment that she applied for and was rejected from fifty-two positions is plainly an adverse employment action under binding precedent." *Ante* (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). In *Burlington Industries*, the Supreme Court explained what a "tangible employment action" was for purposes of Title VII harassment or discrimination claims.

In doing so, it offered the quote that the majority now employs stating that such an action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.  But the Court cited several other cases in an effort to more fully define "tangible employment action":

> Compare *Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (C.A.7 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"), with *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (C.A.7 1994) (a "bruised ego" is not enough), *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (C.A.6 1996) (demotion without change in pay, benefits, duties, or prestige insufficient), and *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (C.A.8 1994) (reassignment to more inconvenient job insufficient).

*Burlington Indus., Inc.*, 524 U.S. at 761.

The Court clearly thought that in order for an action to constitute a "tangible employment action" there needed to be some evidence that the action was adverse, *i.e.*, that it needed to be a termination, a demotion with evidence of lost wages, lost benefits, and so forth.

There is nothing in this definition that supports the majority's conclusion here that Taylor's own self-serving statement, unsubstantiated by any evidence that she was (1) qualified for any of the 52 jobs she applied for; (2) lost wages as a result of being "unsuccessful" in her applications; (3) lost any material benefits; (4) had her responsibilities diminished; or (5) lost a promotion opportunity, is sufficient to be an adverse employment action.  *See Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009) ("Hunter has not alleged that being transferred to a new work unit resulted in significantly different responsibilities, a change in benefits, or any other negative effect.  In other words, Hunter has not shown that the transfer resulted in the type of 'injury or harm' that the Supreme Court in *Burlington Northern* said was

necessary to sustain an action under Title VII."); *Freeman v. Potter*, 200 F. App'x 439, 442-43 (6th Cir. 2006) (recognizing that an adverse action usually "inflicts direct economic harm" on the plaintiff) (quoting *Burlington Indus., Inc.*, 524 U.S. at 761).

Further, the Supreme Court has clearly recognized the problems with relying on a plaintiff's self-serving subjective belief that she has suffered an adverse action. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68-69 (holding that the adverse action inquiry is an objective one thus, avoiding "the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings."); *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) (asserting that an individual's "subjective impression concerning the desirability of one position over another" is insufficient to render an employer's action materially adverse.); *Freeman*, 200 F. App'x at 442-43 (same).

Accordingly, Taylor's non-specific and unsubstantiated assertion that she unsuccessfully applied for 52 positions is insufficient to constitute an adverse action.

Applying these same principles, the majority's conclusion that Taylor suffered an adverse action because her employer *might* have given her a negative reference is also untenable. Initially, Taylor alleged that she suffered an adverse action based on her supervisor's email stating she would not recommend Taylor for an IRS program. Later that same day, however, her supervisor retracted the email and sent a positive recommendation on Taylor's behalf. (R.53-1, Page ID # 441-43). The majority admits that this is not an adverse action because "it is unclear how Taylor was harmed by this letter and why it would have dissuaded her from filing discrimination complaints." Yet, the majority ultimately uses this email to infer that at some prior indeterminate point, during which Taylor was allegedly being "rejected" for the 52 positions, her supervisor was asked for a recommendation and gave her a negative reference. But there is absolutely no admissible evidence either occurred.

Moreover, even if circumstantial evidence is sufficient to conclude Taylor's supervisor gave her negative reference at some prior indeterminate point, certainly in order to show she was harmed by that alleged reference Taylor would be required to

establish that it related to an actual employment prospect.  *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003) ("Crown conceded that Morrison had informed a potential employer that he had terminated plaintiff 'during the busy season' and that plaintiff 'was not eligible for rehire.'").  But as discussed above, the only evidence here that there were real employment prospects is Taylor's self-serving non-specific declaration.

Thus, even considering the evidence in the light most favorable to Taylor, the majority's inference that Taylor's supervisor gave her a negative reference at some point between July 2004 and September 2006, is nothing more than unsupported speculation, and does not establish there is a triable question of fact.  *Matsushita Elec. Indus. Co., Ltd.*, 475 US at 586-587.

## C.

The majority's causation analysis is even more tenuous.  "To establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) (quotation marks omitted).  The majority correctly notes that in some instances temporal proximity between the protected activity and the adverse action may satisfy the causation prong of the prima facie test. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523-26 (6th Cir. 2008).

At the summary judgment stage, we are to draw "reasonable inferences" from the available evidence.  *Anderson*, 477 U.S. at 255.  Here, the majority takes Taylor's unsupported statement that she was denied 52 positions between January 2004 and September 2006 and extrapolates from that assertion, but without any supporting evidence, that Taylor must have been denied jobs at the rate of two per month.  The majority next infers that because she was denied two jobs per month, she must have been denied jobs at the same time she filed her complaints to the EEO and Department of the Treasury in June 2004, September 2004, and April 2005.  After making these multiple inferential leaps, the majority confidently concludes there was "a complete temporal overlap in the rejection from these positions and the protected activity."

This same reasoning leads the majority to conclude that Taylor's supervisor's putative negative reference would also be "nearly contemporaneous with Taylor's application" for any one of the 52 positions. Based on the evidence here—Taylor's unsupported claim that she was denied 52 jobs and her supervisor's email—these are not reasonable inferences supporting a conclusion that Taylor's protected activity was the likely reason for the adverse action. *Michael*, 496 F.3d at 596.

We have previously supported temporal proximity as a basis for establishing causation. *See, e.g.*, *Mickey*, 516 F.3d at 525 ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). Taylor has not cited any case, and the majority points to none, where temporal proximity was deemed adequately established based on a speculative averaging of wholly unsupported claims of multiple adverse actions. In other words, the majority's reasoning on this issue is supported neither by evidence nor law, and thus I respectfully dissent as to Taylor's retaliation claim.