NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0339n.06

No. 16-6643

**FILED**

Jun 16, 2017
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JALANA KAPPEN,

    Plaintiff-Appellee,

v.

ASHLEY MEDICAL SUPPLY, INC.

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

BEFORE:    DAUGHTREY, KETHLEDGE, and STRANCH, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. After being fired from her position as a sales representative, plaintiff JaLana Kappen brought this Title VII action against Ashley Medical Company, Inc. (formerly known as Metro Medical Supply, Inc., and referred to as Metro throughout the proceedings in the district court), alleging gender discrimination and unlawful retaliation. The district court granted Metro's motion for summary judgment on both claims after concluding that (1) Kappen failed to establish a *prima facie* case of gender discrimination, and (2) Kappen failed to establish that Metro terminated her employment in retaliation for her exercise of protected activity. Kappen appeals the grant of summary judgment only as to her retaliation claim. We conclude that the district court's decision is fully supported by the record and, therefore, affirm the district court's order granting summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Kappen began working as a sales representative for Metro, a medical equipment supplier, in May 2011. It is undisputed that in December 2013, Kappen complained about her supervisor, Timothy Coulter, to Metro's Chief Executive Officer, Timothy Booth. Kappen's primary grievance was that in January 2013, Coulter had attempted to keep a "spiff" payment—a payment made by a product manufacturer as an incentive to sell their product—that she had earned. It is also undisputed that Kappen and Coulter had previously resolved their disagreement about this spiff payment. Kappen also reported to Booth that she did not think that Coulter should supervise female employees because Coulter had commented that women should wear short skirts and low cut blouses as a way to promote sales.

In January 2014, Kappen's friend and co-worker, Michelle Thomas, reported to management that Kappen had asked her to file a sexual harassment claim against Coulter. When Booth met with Thomas to discuss this allegation, Thomas asserted that Kappen wanted to have Coulter fired so that Kappen could replace him. Kappen does not dispute that Thomas made this accusation but insists that Thomas was lying. Thomas also told Booth that Kappen talked about Metro's "deep pockets," claiming that they would not have to worry about working for a while if they won a lawsuit. Thomas denied that Coulter had sexually harassed her and, according to Metro, denied telling Kappen otherwise. Kappen does not dispute the fact that Thomas never told management she was being harassed by Coulter, but Kappen does claim that Thomas told her a different story when they spoke in private.

Booth met with Kappen to discuss Thomas's allegations. According to Metro's notes from these meetings, Kappen initially denied telling Thomas to file a complaint against Coulter but later said that she had suggested filing a claim *if* Thomas felt that she was being harassed.

Booth interviewed the other members of the sales team and found no evidence that Coulter had engaged in inappropriate behavior. Metro maintains that Kappen was terminated after management concluded that she had fabricated a false claim against Coulter in an attempt to get him fired. Booth explained that this decision hinged on a credibility determination and that Metro credited Thomas's testimony over Kappen's.

Kappen filed a complaint alleging that Metro had unlawfully retaliated against her after she exercised her rights under Title VII. Metro filed a motion for summary judgment, which the district court granted. Kappen now appeals this order.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Taylor v. Geitner*, 703 F.3d 328, 335 (6th Cir. 2013). Summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the evidence and draw all inferences in the light most favorable to Kappen, the non-moving party. *Taylor*, 703 F.3d at 335.

It is unlawful for an employer to retaliate against an employee who has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e–3(a). "As with a Title VII discrimination claim, a Title VII retaliation claim can be established 'either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 538 (6th Cir.2008)). We analyze claims reliant on circumstantial evidence, like the one before us now, under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Laster*, 746 F.3d at 730. Kappen bears the initial burden of demonstrating the *prima facie* elements of her Title VII

retaliation claim. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). A *prima facie* case "creates a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action." *Id.* (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). If Metro offers a legitimate reason for Kappen's termination, the burden shifts back to Kappen, who must prove that this proffered reason is pretext to hide unlawful retaliation. *Id.*

To establish a *prima facie* case of retaliation under Title VII, Kappen must demonstrate that: (1) she engaged in activity protected by Title VII; (2) Metro knew that she engaged in this protected activity; (3) Metro subsequently took an employment action that was adverse to her; and (4) a causal connection between the protected activity and the adverse employment action exists. *See Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). The district court reasoned aptly that Kappen

> may be able to establish a *prima facie* case based on the fact that she was terminated within just a few months of her alleged report to Mr. Booth and Mr. Delk that Mr. Coulter had made sexually inappropriate comments about female employees wearing short skirts and cleavage, and within only days after an investigation regarding allegations that she had encouraged Ms. Thomas to claim that she was sexually harassed.

However, the district court correctly concluded that because Kappen failed to provide any evidence that Metro's legitimate, non-discriminatory reason for her termination was pretext, her retaliation claim could not survive summary judgment.

Metro claims to have terminated Kappen for a legitimate and non-discriminatory reason, namely, because she violated the company's anti-harassment policy by encouraging a co-worker to file a *false* sexual harassment complaint against another employee. To survive summary judgment, Kappen would have to produce enough evidence "to rebut, but not to disprove" this rationale for her termination. *Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 957 (6th Cir.

2014). She could do this by showing that Metro's legitimate and non-discriminatory rationale (1) had no basis in fact, (2) did not motivate her termination, or (3) was insufficient to motivate her termination. *See Yazidian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial." *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 508 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n. 4 (6th Cir.2009)).

Kappen contends that Metro's proffered rationale has no basis in fact. She points out that during the investigation, she reported to Metro that she had told Thomas to file a claim against Coulter *only if* Thomas had been harassed. Metro claims that it terminated her because it did not find her testimony to be credible, but Kappen argues that a reasonable juror could come to the opposite conclusion and decide that her testimony *was* credible. She states that "[w]hether or not there was a basis in fact for terminating Kappen is a credibility determination, one which is rarely disposable at the summary judgment stage."

This proposition, however, confuses the inquiry. Our prerogative is not to determine definitively whether Kappen's testimony during Metro's investigation was credible—rather, the relevant inquiry is whether Metro had an *honest belief* that it was not. "If an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012). Because an "employer's claim of honest belief is necessarily tied to the nature of its investigation and disciplinary decision process," Metro must identify "particularized facts upon which it reasonably relied" when

deciding to terminate Kappen. *Id.* at 531. We do not require, however, "that the decisional process used by the employer be optimal or that it left no stone unturned." *Id.* (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Metro points to several particularized facts that contributed to its decision to credit Thomas's testimony over Kappen's. First, Kappen's testimony was inconsistent—initially she denied telling Thomas to file a complaint, but later she admitted that she had discussed a complaint with Thomas. Second, Metro knew that Kappen coveted a lucrative new account with the Veterans Administration that had been assigned to Coulter. Third, Kappen's spiff complaint against Coulter was suspiciously timed, considering that the incident took place almost a year prior and the issue had already been resolved between the parties. Fourth, Thomas reported the incident voluntarily, despite her friendship with Kappen and without any apparent motive to lie. Finally, Thomas and the other sales team employees denied being sexually harassed by Coulter, and Coulter had no history of engaging in sexually harassing behavior.

It is possible that Metro decided to credit the wrong employee, or that Metro mischaracterized Kappen's actions as a malicious attempt to sabotage Coulter, rather than a misguided attempt to advocate for a friend, "[b]ut a case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds for termination." *Id.* at 530. "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen*, 580 F.3d at 401 (internal quotations omitted). Kappen has not produced evidence sufficient to rebut Metro's proffered reason for Kappen's termination and therefore fails to establish that Metro's proffered reason was pretext for unlawful retaliation.

**CONCLUSION**

For the reasons set out above, we AFFIRM the district court's judgment.