NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0192n.06

Nos. 11-1672, 12-1456

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 21, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMIE QUINN, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| RON GRIFFITH; PIPE & PILING SUPPLIES | ) | |
| (U.S.A.) LTD., a foreign profit corporation, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: BOGGS and WHITE, Circuit Judges, and McCALLA, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.** A jury found in favor of Plaintiff Jamie Quinn on her hostile-environment sexual-harassment claims against her former employer, Defendant Pipe & Piling Supplies (P&P), and supervisor, Defendant Ron Griffith. Defendants challenge pre-trial orders denying summary judgment to P&P, the apportionment of the compensatory-damage award, and several other rulings. We AFFIRM, but REMAND for clarification of the judgment.

**I.**

Griffith hired Quinn as a bookkeeper in November 2005. Griffith was Quinn's supervisor throughout her employment, and the two were the only employees at P&P's Kincheloe, Michigan, office. In June 2008, Quinn reported to Jack Dym, P&P's President, that Griffith had been harassing

---

[*]The Honorable Jon Phipps McCalla, Chief United States District Judge for the Western District of Tennessee, sitting by designation.

her since November 2007. Dym's office was in Montreal, Canada. After several months, Dym concluded that Quinn's allegations could not be substantiated. During those months, Quinn received full pay and benefits and worked at the office only when Griffith was not there.

Dym hired a third employee to work at the Kincheloe office and asked Quinn to resume her normal duties and hours, but she declined. Quinn filed the instant suit in July 2009, alleging hostile-environment sexual harassment under Title VII and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2201 *et seq*., against both Defendants and battery against Griffith.

On a special verdict form, a jury found that Quinn had been subjected to a hostile work environment by both Defendants, that she was entitled to compensatory damages of $25,000, and to punitive damages of $175,000 against P&P and $25,000 against Griffith.[1] On Defendants' post-judgment motion to amend the judgment to conform with Title VII's statutory damages cap, 42 U.S.C. § 1981a(b)(3), the district court left the compensatory damages award intact, allocating it to the ELCRA claim, and proportionally reduced the total punitive damages award to $50,000, the cap applicable to employers with 15 to 100 employees. 42 U.S.C. § 1981a(b)(3)(A). The amended judgment awarded Quinn $25,000 in compensatory damages, and punitive damages of $6,250 against Griffith and $43,750 against P&P.

---

[1]Quinn's battery claim is not at issue in this appeal.

## **II. Title VII Claim** - Denial of Summary Judgment as to P&P

P&P maintains that the district court ruled *sua sponte* that it was *strictly*[2] liable for Griffith's

conduct as a matter of law on the sole basis that P&P did not have an anti-harassment policy, and

that the question whether it was *vicariously* liable should have gone to the jury.

Our review of the district court's denial of summary judgment is for abuse of discretion

unless the denial is based on purely legal grounds, in which case review is de novo. *McMullen v.*

*Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004); *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503,

506 (6th Cir. 2003). Title VII prohibits discrimination based on sex that creates a hostile or abusive

working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Only employer

liability–the last prima facie prong of this Title VII claim–is at issue.[3] *See Thornton v. Fed. Express*

*Corp.*, 530 F.3d 451, 455 (6th Cir. 2008).

### **A**. *Ellerth/Faragher* **Affirmative Defense to Vicarious Liability**

Where a plaintiff employee suffered no tangible employment action, as in the instant case,

the employer can defend against vicarious liability for sexual harassment by its supervisor by

---

[2]P&P at times mischaracterizes the district court's ruling as one of strict liability, and at other times properly characterizes the ruling as one of *vicarious* liability. Defs.' Br. at 11-14, 16; Reply Br. at 2.

[3]To establish a prima facie case of hostile-work-environment sexual harassment under Title VII, a plaintiff must show by a preponderance of the evidence that 1) she was a member of a protected class, 2) was subjected to unwelcome sexual harassment, 3) the harassment was based on sex, 4) the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment, and 5) there is a basis for employer liability. *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008).

establishing by a preponderance of the evidence the affirmative defense set forth in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). *Thornton*, 530 F.3d at 456. The affirmative defense requires that the employer demonstrate two elements:

> (a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Thornton*, 530 F.3d at 456 (citing *Faragher*, 524 U.S. at 807, and *Ellerth*, 524 U.S. at 765).

Contrary to Defendants' argument, the district court neither ruled *sua sponte* on P&P's liability, nor ruled that P&P was strictly liable. Rather, the district court rejected P&P's argument that it was not vicariously liable for Griffith's conduct in part because the adequacy of P&P's response to Quinn's allegations of sexual harassment was "clearly . . . a contested issue," and in part because P&P waived the *Ellerth/Faragher* defense both by failing to raise it in answer to Quinn's complaint and by disclaiming it in its summary-judgment motion.[4] After observing that the central dispute was whether Griffith's conduct created an actionable hostile work environment, the district court properly ruled that, should the jury find such actionable conduct, P&P was *vicariously liable*

---

[4]P&P's summary judgment motion argued that the *Ellerth/Faragher* affirmative defense "does not even apply to this case at all. An 'affirmative defense' is one in which all material allegations are admitted, but for some other reason(s) the Defendant is not liable . . . . [T]hese defendants do not admit, but rather deny all material allegations."

as a matter of law because it presented no evidence to support that it had exercised reasonable care to prospectively prevent sexual harassment, as required under *Ellerth* and *Faragher*.[5]

**B.**

On appeal, P&P correctly asserts that *Ellerth* and *Faragher* permit an employer to defend against Title VII respondeat superior liability even absent an anti-harassment policy. *See Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807. But P&P's contention is that Quinn could have mitigated her injuries and damages had she reported Griffith's alleged harassment earlier, rather than months after it began. Even if preserved, this argument fails because it goes only to the second *Ellerth/Faragher* element, and does not address P&P's failure to present evidence in support of the first element of the affirmative defense. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.

**III**. **ELCRA claim** - Denial of Summary Judgment as to P&P

P&P also asserts that the district court should have granted it summary judgment on Quinn's ELCRA claim, arguing that the court wrongly required it to disprove responsibility for the alleged hostile work environment.

"[C]laims of discrimination brought under the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *Galeski v. City of Dearborn*, 435 F. App'x 461, 466

---

[5]Regarding the prospective half of the first *Ellerth/Faragher* element, it was undisputed that P&P had no anti-harassment policy. And P&P's brief below cited no evidence to support that it had otherwise exercised reasonable care to *prospectively* prevent sexual harassment. *Ellerth*, 524 U.S. at 765. Thus, the district court properly determined that, even had P&P preserved this affirmative defense, P&P made no showing that it could satisfy both of its elements. *Quinn v. Pipe & Piling Supplies (U.S.A.) Ltd.*, No. 2:09-CV-161, 2010 WL 4226734, *3 (W.D. Mich. October 21, 2010).

n.4 (6th Cir. 2011) (citing *Hummeny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004)); *Elezovic v. Bennett*, 731 N.W.2d 452, 457 (Mich. Ct. App. 2007). The district court did not impose a higher burden of proof on P&P than the ELCRA permits. The court simply denied P&P summary judgment because Quinn presented evidence demonstrating triable issues of fact as to the adequacy and promptness of P&P's response to her allegations of harassment. *See, e.g.*, *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 919 (Mich. 2000).

## IV.

Defendants also challenge the district court's denial of their motion for leave to file a counterclaim against Quinn asserting that she violated Michigan's eavesdropping statute, Mich. Comp. Laws § 750.539 *et seq.*, which has been interpreted to create a civil right of action. *See Lewis v. LeGrow*, 670 N.W.2d 675, 682 (Mich. Ct. App. 2003). Review is for abuse of discretion. *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002).

Defendants' counterclaim was based on Quinn's undisclosed, two-day video surveillance of the Kincheloe office, a portion of which was shown to the jury. The video depicted Griffith hugging Quinn, among other things. Applying this circuit's "logical relationship" test for determining whether a counterclaim is permissive or compulsory, the magistrate judge determined it was permissive and that the court thus had no independent basis for federal-question subject-matter jurisdiction over Defendants' claim. On review, the district court held that the magistrate judge erred on the jurisdictional question, but concluded that the interests of justice weighed against granting Defendants' motion for several reasons.

As the district court determined, Defendants' proposed counterclaim was permissive; it did not arise out of the same transaction or occurrence as Quinn's sex-harassment claim. *See Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991). The issues of law and fact raised by the claims are not largely the same and the same evidence would not support or refute both claims. *See id.* Since Quinn had not been charged with violating the eavesdropping statute, and Defendants' motion for leave to amend came months after the deadline for amending pleadings and after discovery had closed, the district court did not abuse its discretion in denying leave to amend. *See Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009).

## V.

Defendants challenge the district court's *sua sponte* striking of their lip-reading expert, Jessica Rees, maintaining that they had no notice that the court would consider Rees's expert testimony and strike it *before trial*, or opportunity to be heard on the matter. This court reviews for abuse of discretion the district court's screening of expert evidence under Fed. R. Evid. 702. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 668 (6th Cir. 2010).

Following the final pretrial conference, the magistrate judge observed that Defendants "failed to fully comply with the requirements to file an expert report and there are potential *Daubert* issues with . . . proposed expert witness Jessica Rees. Whether witness Rees should be stricken is respectfully left to the trial judge for review and resolution." R. 107. In addition, the parties' Joint Pretrial Order stated that Quinn reserved the right to challenge the admissibility of Rees's testimony, and noted that the magistrate judge had referred the issue to the trial judge. R. 117 at 12. Thus, Defendants were on notice both that Quinn contested the admissibility of Rees's testimony and that

the district court would take up the issue. Understandably, Defendants expected to defend the admissibility of Rees's testimony *at trial*. But they do not challenge the district court's authority to manage its docket and narrow matters *before* trial. *See Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 511 (6th Cir. 2003) (citing *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320 (5th Cir. 1996)).

Having viewed the video, which had no sound, the district court determined that its quality was poor, its speed was highly variable and produced distortion, and that, because of these impediments, the transcript Rees prepared of the purported dialogue depicted on the video was full of omissions. Defendants challenge none of these determinations. The district court did not abuse its discretion by concluding that the video was not reliable and excluding Rees's testimony on that basis. *See Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 554–55 (6th Cir. 2004) (noting that before admitting expert testimony, the district court must determine that the testimony rests on a reliable foundation).

Defendants' argument that exclusion of Rees's testimony prejudiced them by robbing Griffith of any reasonable ability to recall the dialogue between him and Quinn shown on the video is not persuasive. Defendants were free to ask Griffith and Quinn at trial what was said during the video.

**VI.**

Defendants next challenge the district court's exclusion of evidence or argument that Quinn violated Michigan's eavesdropping statute by planting the clandestine video recorder in the Kincheloe office, and the court's striking of several written communications between Quinn and her counsel. Review of these claims is for abuse of discretion. *Greenwell v. Boatwright*, 184 F.3d 492, 495 (6th Cir. 1999).

The district court's order allowed Defendants to examine Quinn's "actions and any relevant facts and circumstances surrounding the creation and authenticity of the video." R. 113. The court precluded P&P only from arguing or presenting evidence that Quinn's conduct was *criminal* under Michigan's eavesdropping statute. The court did not abuse its discretion in determining that such argument would be unduly prejudicial and irrelevant given that Quinn had not been charged under that statute and the court had disallowed Defendants' counterclaim.

The district court also properly struck the emails between Quinn and her counsel as attorney-client privileged communications. The court concluded that their disclosure during discovery was inadvertent, and that inadvertent disclosure does not waive privilege. Once Defendants made known their intent to present the emails at trial, Quinn's counsel moved to strike them. In addition, as the district court noted, the parties had agreed in the joint status report that they would return any document that either counsel identified as inadvertently disclosed.

**VII**. **Punitive Damages under Title VII** - Denial of Summary Judgment as to P&P

Defendants argue that the district court erred when it completely denied P&P's pre-trial motion seeking dismissal of Quinn's punitive-damages claim after having found that Quinn could not show that P&P itself acted with malice or reckless indifference to Quinn's rights, and after having determined that the question whether P&P was vicariously liable for Griffith's conduct was for the jury; i.e., the court should have granted summary judgment as to P&P's *independent* liability, leaving the issue of P&P's *vicarious* liability for punitive damages to the jury.

**A.**

Title VII allows recovery of punitive damages only if a complaining party "demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). An employer may avoid liability by showing that it engaged in good-faith efforts to comply with Title VII, which is most often shown by effective implementation of an anti-harassment policy. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544–45 (1999).

**B.**

Contrary to Defendants' contention, the district court's determination that no reasonable jury could find malice or reckless indifference on P&P's part was limited to the period *after it received notice of Quinn's allegations*, i.e., after June 2008. The district court properly denied P&P summary judgment as to its independent liability for punitive damages.

The crux of P&P's argument on appeal—an argument raised for the first time—is that the verdict form permitted the jury to award punitive damages against both it and Griffith. Indeed, in accordance with the special verdict form, the jury assessed punitive damages against both Defendants and the judgment so reflects. P&P waived this issue by not objecting below to either the jury instructions or special verdict form. *See United States v. Universal Mgmt. Servs., Inc.*, 191 F.3d 750, 758–59 (6th Cir. 1999). Moreover, as the district court's opinion noted, "an employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for a punitive damages award." *Kolstad*, 527 U.S. at 546.

**VIII.**

Lastly, Defendants' argument that the district court erred by apportioning the $25,000 compensatory-damages award to Quinn's ELCRA claim, rather than her Title VII claim, rests on the incorrect premise that Quinn abandoned her ELCRA claim at trial.  The record is clear that Quinn abandoned her ELCRA claim only against P&P, not against Griffith.[6]  Nevertheless, the amended (final) judgment states that the $25,000 award is "against Defendants."  Given Quinn's concession at argument before this court that the compensatory-damages award is against Griffith only, we remand to the district court for clarification or modification of the amended judgment to reflect that the compensatory damages award is against Defendant Griffith alone.[7]

**IX.**

For the reasons stated, we AFFIRM the district court's orders denying P&P summary judgment and the other challenged rulings, but REMAND for clarification or modification of the judgment in regard to the award of compensatory damages.

---

[6]Quinn did not request jury instructions on *P&P's* liability under the ELCRA because of the court's pre-trial ruling that P&P was vicariously liable *under Title VII* for Griffith's conduct, should the jury find such actionable conduct.

[7]We observe that punitive damages are not available against Griffith under Title VII (as shown by the district court's grant of summary judgment in Griffith's favor as to his independent liability under Title VII.)  *See e.g.*, *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012) (observing that "[a]n individual cannot be held personally liable for violations of Title VII.").  And punitive damages are not available under the ELCRA.  *See Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, (Mich. 2004) (citing ELCRA, Mich. Comp. Laws § 37.2801(3)).  On remand the parties should address the allocation between Griffith and P&P of the $50,000 punitive-damages award.